CARYL LEE RIMKUS, n/k/a Caryl Lee Murray, Petitioner-Appellant, v. RONALD J. RIMKUS, Respondent-Appellee.

First District (1st Division) No. 1—89—2663

Opinion filed June 11, 1990.

McBride, Baker & Coles, of Chicago (Paul D. Frenz, of counsel), for appellant.

Mathias & Schmarak, P.C., of Broadview (Barry J. Schmarak, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner Caryl Murray filed a petition for rule to show cause and for child support on July 26, 1989, in the circuit court of Cook County against respondent Ronald Rimkus. Petitioner sought to enforce a provision in a marital settlement agreement regarding child support which was incorporated in the judgment for dissolution of marriage entered on December 27, 1984. Following a hearing on August 30, 1989, the trial court entered an order which dismissed the rule to show cause, denied child support arrearage, and set monthly child support after considering respondent's net income. Petitioner appeals, raising three issues: (1) whether the court's finding that respondent did not violate the judgment was against the manifest weight of the evidence; (2) whether child support arrearage was due; and (3) whether respondent's business expenses should have been deducted to determine his net income.

The marital settlement agreement under the heading *"Child Support"* noted that respondent was then unemployed and without income at that time. Therefore, the parties agreed to request the court to reserve judgment on the issue. The judgment of dissolution stated that the court retained jurisdiction to modify or enforce the judgment and "specifically reserves the issue of child support." The agreement was incorporated in the judgment. The second paragraph regarding child support stated:

"The husband agrees to notify the wife immediately upon receiving any income and to pay to the wife, as and for the support of the parties minor child, a fair and equitable portion thereof. The husband further agrees that if and when such income is of a substantial amount and/or is received on a regular and/or periodic basis that he will immediately enter into discussions with the wife regarding child support payments and that such agreement will be submitted to the Court and if the parties are unable to agree then the matter is to be presented to this court for its determination."

The evidence at the hearing as presented through petitioner's testimony showed that petitioner had a conversation with respondent at the beginning of 1988. He told her that he had a new job; however, he did not indicate that he had any money. Respondent told her that he would pay support when he had some money. He did not indicate at that time or any subsequent time how much money he was earning with his new job. Petitioner asked him subsequently in 1988 whether he was going to make support payments, and he said that he would when he had the money. She had no discussions with respondent in 1989 regarding his income and could not remember asking him to pay support in 1989. Respondent paid a total of $600 in July and August 1989. Petitioner also said that respondent told her that he wanted their son and did not want to pay child support.

Payments had been made by respondent on a sporadic basis from mid-1985 until February 1987. Respondent paid $2,300 in support in 1986, on an income of $2,600, and $200 in 1987, on an income of $2,300. However, no issue is raised with respect to these payments.

Respondent testified that he spoke with petitioner shortly after he began a new job in January 1988. They discussed the fact that he was employed and that he was not seeing their son. Petitioner told respondent, "I don't want your money. Come and see your son." He said that petitioner did not ask for any child support at that time. He indicated that he then saw his son, but that no specific agreement regarding child support was made.

It was established that respondent had a gross income of $26,250 in 1988, or $500 per week. He was earning the same amount in 1989. The court found that respondent had complied with the judgment when he notified petitioner that he had a job. When no agreement on support was reached, it was incumbent on petitioner to come into court under the terms of the judgment. Arrearage of support was therefore denied. Respondent was ordered to pay $255 per month for child support beginning in July 1989.

In her first issue, petitioner argues that respondent was required to pay a "fair and equitable portion" of any income as child support under the terms of the agreement. She claims that he was therefore required to notify petitioner of his income and to enter into discussions with her regarding payments. She characterizes the judgment as intended to be "self-executing." Therefore, she concludes that respondent should have been found in contempt.

Respondent asserts that the evidence showed a conflict between the parties, and under the terms of the judgment the support issue should have been presented to the court. He says, however, that peti-

tioner waited until July 1989 to file her contempt petition when in reality it was a petition to modify the judgment. He argues that he complied with the judgment and that at any rate there was no willful refusal to pay support based upon the evidence.

 The trial court can properly enforce provisions of a settlement agreement incorporated into a judgment of dissolution. (*In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 478 N.E.2d 537.) The interpretation of a marital settlement agreement is a question of law, and the same rules that apply to the construction of contracts govern such interpretation. (*In re Marriage of Talmadge* (1989), 179 Ill. App. 3d 806, 534 N.E.2d 1356.) In interpreting the provisions, the court seeks to give effect to the intentions of the parties. (*Moriarty*, 132 Ill. App. 3d at 898.) Clear and unambiguous agreements must be given their ordinary and natural meaning. (*Talmadge*, 179 Ill. App. 3d at 813.) Judgments of dissolution should be reasonably construed, however; those providing child support receive special care and consideration by the courts. *Moriarty*, 132 Ill. App. 3d at 898.

██ In reviewing the present marital settlement agreement regarding child support, we affirm the trial court's determination. First, any income received by respondent was to be reported to petitioner and a "fair and equitable" amount thereof was to be paid to petitioner as support. Based upon a reading of the remainder of the provision and evidence at the hearing, the first sentence was intended to address insubstantial, sporadic receipts of income by respondent as was the case between 1985-1987. At the time the settlement agreement was made, respondent was unemployed and without income. He had his own business in 1986 and 1987. He paid irregular support payments from the income received in 1986 and 1987, and petitioner raised no issue with those payments. Nor did she claim that he was obligated to enter discussions to set support payments based on that income at that time.

When the income became "substantial," "regular," and/or "periodic," respondent was to enter into discussions with petitioner to set support payments. The only obligation on respondent at that time was to enter into discussions with petitioner to set support payments. Clearly, when respondent became employed in January 1988, he had at least "regular" income in that he was earning $500 per week. He was obligated to enter into discussions with petitioner to try to set support payments.

The settlement agreement further provided that an agreement on payments would be submitted to the court which had reserved the issue of support. Thus, the dissolution judgment and settlement agree-

ment did not provide for an award of child support but required future court determination on the matter. (See *Connor v. Watkins* (1987), 158 Ill. App. 3d 759, 511 N.E.2d 200; *Nerini v. Nerini* (1986), 140 Ill. App. 3d 848, 488 N.E.2d 1379.) The settlement agreement was not "self-executing" as petitioner claims.

If no agreement on payments was reached, the matter was also to be submitted to the court for a determination. Obviously, if the parties had no discussions regarding support payments, an agreement would not be possible.

The evidence was conflicting as to whether the parties tried to set support payments. Petitioner claimed that she asked respondent about payments on two occasions, and he said that he would pay when he had money. Respondent claimed that petitioner indicated she was not concerned with payments. At any rate petitioner's own testimony showed that respondent did not enter into an agreement regarding support payments despite the fact that he had a job. Even though respondent did not tell petitioner he had regular income, this should not have prevented her from seeking court intervention. Petitioner was aware that respondent was employed even while he was claiming that he had no money for support payments. When no discussions or agreement were forthcoming, the settlement agreement provided that the matter be submitted to the court. It took into consideration a situation just as this one by requiring court intervention when no agreement could be reached. Based upon the dissolution judgment, the settlement agreement incorporated therein and the evidence before the trial court, we do not find that the trial court erred in holding that respondent did not violate the terms of the dissolution judgment.

This conclusion leads us to affirm the denial of child support arrearage. As stated above, the settlement agreement required a court determination of the child support payments when respondent had "substantial," "regular and/or periodic" income whether the parties agreed to an amount or not. There was no order of child support in effect until petitioner sought such an order with her petition.

Lastly, petitioner claims that the trial court allowed respondent to deduct $6,696 in nonreimbursed business expenses from his gross income to determine net income. Respondent was a commissioned salesman who used Schedule C of his Federal income tax return to reduce his income under section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 505). After also deducting taxes, the court applied the 20% statutory guideline and arrived at a monthly payment of $255 in child support. Petitioner asserts that nonreimbursed business expenses cannot be deducted to

determine net income under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3).

Respondent claims that nonreimbursed business expenses are deductible to determine net income under section 505(a)(3)(h). (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3)(h).) Both petitioner and respondent rely upon *In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 519 N.E.2d 1095, to support their arguments.

The facts in *McBride* clearly distinguish it from the case at bar. The parties in *McBride* entered into an agreement regarding child support. The agreement defined the husband's net income, and the husband claimed nonreimbursed business expenses were deductible to determine his net income. However, the court found that under the terms of the agreement such expenses were not deductible.

The question of deductible business expenses under section 505 arose in *McBride* when the husband claimed they should be excluded from his gross income because they were equivalent to "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3)(h).) The appellate court would not disturb the trial court's finding that there was insufficient evidence that the expenditures were necessary to generate income. It also observed that the husband had offered no authority that nonreimbursed business expenses are the equivalent of debts incurred to produce income, nor did the court's research reveal any. Moreover, the parties' agreement had defined net income.

The respondent and petitioner herein have not provided any authority for their respective positions other than *McBride*, nor have we found any Illinois case specifically on point. However, in *Stern v. Stern* (1989), 179 Ill. App. 3d 313, 534 N.E.2d 533, one of the points raised on appeal concerned the husband's evidence of his net income under section 505. He had represented that his net income was $1,800 per month after business expenses were deducted. The appellate court found that the trial court did not have sufficient evidence before it regarding the husband's income since he did not supply documentation of his business expenses. Implicit therein is the fact that business expenses would be deductible. See also *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 483 N.E.2d 692 (wherein the court noted that the trial court had evidence of the husband's financial condition including his 1983 income which indicated he earned roughly $54,000 and had $17,000 in business expenses as a self-employed sales representative).

In *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005, a temporary order for maintenance and child support required the husband to pay the greater of 40% of his net income, defined as income less taxes and business expenses, or $1,250 per month. The dissolution judgment ordered the husband to pay $2,500 per month in maintenance and child support. On appeal he claimed that this amount was excessive since he contended his net income was only $40,000 per year. The appellate court was not convinced that his net income accurately reflected his ability to pay under sections 504(b) and 505(a). He had income of $150,000 from his medical practice in 1980, from which he deducted $87,000 in business expenses, including 11 business trips, car depreciation, dwelling depreciation for that part used as an office, and various "one-time-only" deductions. He also apparently deducted a salary he paid to a woman with whom he lived for bookkeeping work. The woman also accompanied him on three business trips, and he paid all the rent. The appellate court found that the trial court could reasonably conclude that the husband had more spendable income than he claimed.

We read *Dwan* as providing that nonreimbursed business expenses are deductible to determine net income. However, the business expenses must be shown to be reasonable and necessary.

Looking at other jurisdictions which have enacted legislation based upon the Uniform Marriage and Divorce Act, business expenses have been deducted to determine net income to pay child support based on the concept of the parent's ability to pay. In *In re Marriage of Crowley* (Colo. App. 1983), 663 P. 2d 267, the Colorado Court of Appeals held that obligations relating to reasonable and necessary expenses associated with maintaining the structure and solvency of a business or the production of income can be satisfied before payment of child support. Net income after reasonable and justifiable expenses was a primary consideration in determining the ability to pay support.

The Minnesota Court of Appeals in *Martin v. Martin* (Minn. App. 1985), 364 N.W.2d 475, looked at the statutory guidelines to determine net income to pay child support which allowed deductions for taxes, social security, and other payroll-type deductions. There was no provision for business deductions or expenses incurred in generating income or cases interpreting the definition as applied to self-employed obligors. However, the explanatory section in the guidelines provided that certain criteria were considered in the guidelines: all earnings, income, resources of the obligor; basic living needs of the obligor; and financial needs of the child. The appellate court upheld the trial court's determination of the husband's net income which had taken

into consideration business expense deductions for meals and lodging as an independent over-the-road truck driver.

■■ ■ These other jurisdictions deducted business expenses in order to determine the non-custodial parent's ability to pay child support from net income. Our statute provides that "the financial resources and needs of the non-custodial parent" be considered a relevant factor in applying the statutory guidelines. (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(2)(e).) However, section 505(a)(3) is more specific in that it defines net income for purposes of setting child support. Section 505(a)(3)(h) allows deductions for "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3)(h).) We find that section 505(a)(3)(h) allows the deduction of nonreimbursed business expenses which are "reasonable and necessary for the production of income" to determine net income. Since petitioner did not challenge respondent's Schedule C nonreimbursed business expenses on any basis other than that they were not deductible under section 505(a)(3), we affirm the trial court's decision.

The judgment of the circuit court is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.