*In re* MARRIAGE OF PATTY S. ALEXANDER, Petitioner-Appellee, and RONALD ALEXANDER, Respondent-Appellant.

Fourth District    No. 4—92—0021

Opinion filed July 23, 1992.

Jay M. Watts, of Decatur, for appellant.

Tietz & Richardson, of Decatur (Michelle K. Robinson, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

Respondent Ronald Alexander appeals an order of the circuit court of Macon County requiring him to pay one-half of his minor son's tuition to a parochial high school. We affirm.

Respondent's marriage to petitioner Patty Alexander was dissolved in 1978. They had one son, Michael, who was two years of age at the time of the divorce. The divorce was heard as a contested matter. Petitioner was awarded custody of Michael. Respondent was ordered to pay the sum of $65 per week for Michael's partial support. Subsequently, respondent's child support obligation was raised to $100 per week.

Each party remarried and later divorced. Respondent has a child from his second marriage. Petitioner married a man of the Catholic faith, and she converted to that religion. Michael had been attending parochial school since the fourth grade. In November 1991, respondent filed a petition requesting reduction or abatement of his child sup-

port obligation due to a strike against his employer, Caterpillar, Inc. He alleged that his only source of income consisted of $100 per week in strike benefits. A hearing was held on this petition on December 4, 1991. The testimony generally supported respondent's request for reduction of his child support, and petitioner did not object. The parties agreed that petitioner could present an oral motion to the court at this hearing, asking that, when respondent returns to his employment, he be ordered to pay one-half of Michael's yearly tuition at St. Theresa's, a parochial high school.

Petitioner testified in support of her motion. Her approximate net income from her employment was $1,500 per month. Her second ex-husband resides with her and Michael. Michael's tuition at St. Theresa's is approximately $1,848 per year. Petitioner testified that she inherited some money from her mother when she died the previous year. She used $32,000 to pay toward the purchase of her home, and she has $25,000 in savings which she intends to use for Michael's college education. She stated she wanted Michael to go to St. Theresa's because she believes he will have a better education and be better prepared for college. She bases her opinion on experience with people she knows and works with. She testified that Michael attends church about once a month.

Respondent testified that he would prefer that Michael attend a public high school. When he is working, respondent's gross weekly income is in excess of $600. He does not believe he has the means to contribute one-half of Michael's tuition. Respondent testified that petitioner had previously told him it was none of his business where Michael went to school. When asked, respondent did not know who Michael's teachers were, what his grades had been, or what courses he was taking. He admitted that he had not attended any parent-teacher conferences since Michael was in fourth grade.

At the conclusion of the hearing, the trial court reduced respondent's child support for the remaining period of his unemployment and ordered respondent to pay one-half of Michael's yearly tuition at St. Theresa's when he returns to full-time employment. The court indicated it believed the controlling factors were the lifestyle Michael would have enjoyed had the parties remained married and the ability of both parents to pay the tuition. Respondent now appeals this order.

On appeal, respondent contends this is a case of first impression in the Illinois Appellate Court. He phrases the issue thus:

> "[W]hether, absent a property settlement agreement and divorce judgment which dealt with the issue, or other agreement or ratification by the non-custodial parent, a trial court has the

power to order a non-custodial parent to contribute toward tuition costs incurred by the custodial parent who unilaterally decides to send the *minor* child of the parties to a private (parochial) school." (Emphasis in original.)

■ Respondent concedes that unless the court orders otherwise, section 608(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 608(a)) authorizes the custodial parent to determine the child's upbringing, which includes his religious training and education. He also concedes the court's authority under section 513 of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 513) to order contribution toward educational expenses of a child who has attained majority. However, respondent seeks to draw a distinction between college educational expenses and educational expenses for a minor child, since the latter has access to a public school system. According to respondent, it is logical to authorize courts to order noncustodial parents to help pay their children's college expenses, as a college education is normally not available to those who cannot pay. However, respondent argues there is less reason to order a noncustodial parent to assist in paying for a minor child's private school education where public schools are available and no persuasive reasons are given by the custodial parent for sending the child to a private school.

The trial court has wide discretion in awarding child support. (*In re Marriage of Sipich* (1980), 80 Ill. App. 3d 883, 887, 400 N.E.2d 696, 699.) Modification of a child support award also lies within the sound discretion of the trial court. Its decision will not be reversed by a court of review absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912, 483 N.E.2d 692, 696.

■ The source of a court's authority to order a noncustodial parent to contribute to a minor child's private school education lies in section 505(a)(2)(d) of the Act, which sets forth the factors which are relevant to a determination of child support. One of those factors is the educational needs of the child. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2)(d).) Were it not anticipated that a court could order a noncustodial parent to contribute to the private school education of a minor child, it would be unnecessary in many cases for a court to consider a child's educational needs, since public schools typically involve little cost to parents.

Despite this statutory authority, respondent argues that petitioner should not be allowed to unilaterally enroll Michael in parochial school

and then require respondent to contribute to his tuition. In support of this argument, he cites *Van Nortwick v. Van Nortwick* (1967), 87 Ill. App. 2d 55, 230 N.E.2d 391 (*Van Nortwick II*). The background of that case is set out in the appellate court's opinion in a prior appeal between the parties in *Van Nortwick v. Van Nortwick* (1964), 52 Ill. App. 2d 229, 201 N.E.2d 857 (*Van Nortwick I* ). The parties agreed at the time of their divorce that defendant father would pay preparatory school and college expenses for their two minor sons. The schools to be attended were to be chosen by mutual agreement of the parties. By agreement, the older son Thomas attended Kent Preparatory School in Connecticut for two years. The father paid his expenses. After that, the father withdrew his agreement and expressed a desire for Thomas to attend public school. Instead, the mother sent Thomas back to Kent and his grandmother paid his expenses. The mother filed a petition for rule to show cause, alleging the father was in contempt for violating the agreement to send Thomas to Kent and asking for reimbursement for his expenses. The trial court found in the mother's favor, and the father appealed. The appellate court reversed the finding of contempt. It pointed out that the father was not required by the agreement to send Thomas to Kent. Rather, the agreement required the father to pay Thomas' expenses at any school the parties might select by joint agreement. The court stated that once the father withdrew his consent for Thomas to attend Kent, that school had not been selected by joint agreement. The court also pointed out that no effort was made to resolve the impasse prior to the mother reenrolling Thomas at Kent. The court found that the mother should have attempted to discuss the matter with the father or sought a ruling from the court prior to unilaterally enrolling Thomas at Kent. (*Van Nortwick*, 52 Ill. App. 2d at 232-38, 201 N.E.2d at 858-61.) In *Van Nortwick II*, the mother enrolled the younger son William at Kent, paid half the year's tuition, petitioned the court for directions, and requested the father be required to pay William's expenses at Kent. The trial court granted the petition, and the father appealed. The appellate court once again reversed, saying the mother could not unilaterally choose a school, pay the tuition, and then seek to require the father to reimburse her for those expenses. The record showed the mother made no attempt to consult the father, as required by the divorce decree. *Van Nortwick*, 87 Ill. App. 2d at 57-58, 230 N.E.2d at 392-93.

Respondent contends that *Van Nortwick II* represents the law in Illinois in regard to a noncustodial parent's contribution to private school expenses. He believes, based upon that case, that we must re-

verse the trial court's decision in the instant case. We disagree with respondent's reasoning. *Van Nortwick I* and *Van Nortwick II* have no relevance to the instant case. In the *Van Nortwick* cases, the parties' divorce decree contained a provision giving the father a voice in the selection of schools for the children, requiring mutual agreement. The mother did not abide by that agreement when she enrolled both boys at the preparatory school without securing either the father's agreement or court authorization. This is the reason the father was not required to pay the school expenses. The *Van Nortwick* cases do not stand for the proposition that respondent here cannot be ordered to contribute to Michael's parochial school tuition.

■ In the instant case, evidence showed that Michael had been attending parochial school since the fourth grade, evidently without objection from respondent. We recognize that respondent testified petitioner had told him over the years that Michael's schooling was none of his concern. However, had respondent found objections to Michael's attendance at parochial school, section 608(a) of the Act was available for court review of petitioner's authority as the custodial parent in regard to Michael's education. We find that having basically acquiesced in Michael's attendance at parochial grade school for a number of years, that respondent's objection to his attendance at a parochial high school on the ground it is an inappropriate choice of schools is of no particular significance. At the time of the trial court hearing on tuition payments, petitioner as custodial parent was responsible for educational decisions. No agreement as in *Van Nortwick* existed.

Respondent claims that petitioner gave no persuasive reasons for Michael's attendance at St. Theresa's. In fact, he refers to her stated reasons as "whimsical." However, as noted above, the evidence was that Michael had received a parochial school education since the fourth grade, without objection from respondent. The trial court could have concluded that it was appropriate to allow Michael to continue this education, even though it would entail some cost to his parents. We do not find anything whimsical about petitioner's stated reasons for enrolling Michael at St. Theresa's. On the contrary, petitioner's desire for Michael to attend a parochial high school was consistent with the prior education he had received. We do not find it inappropriate for petitioner to have relied on the advice of others who had knowledge of St. Theresa's to support her statements at the hearing regarding her belief that attendance at St. Theresa's would give Michael a better education and better prepare him for college. Drawing upon the experience of others is often the best way for a parent to learn the merits of a particular school.

Respondent also argues that even assuming the trial court had the authority to order him to pay part of Michael's private school tuition, the court erred in this case because respondent cannot afford to pay one-half the tuition. We also reject this argument. Both parties testified concerning their financial resources and expenses. Financial affidavits of both parties were available to the trial court. Respondent testified that when he is working full-time, his gross weekly income exceeds $600. The trial court did not order respondent to contribute to Michael's tuition until he returned from the strike to full-time employment. Until that time, petitioner will bear the full cost of the tuition. Respondent claims that his half of Michael's tuition will amount to $200 per month. He claims the trial court abused its discretion in ordering him to make such a payment in addition to his child support. However, respondent's $200 figure is erroneous. In reality, based upon a yearly tuition of $1,848, respondent's share of Michael's tuition will be $924 annually, or $77 per month. We find no abuse of discretion.

The trial court's order requiring respondent to pay one-half of Michael's parochial school tuition upon his return to full-time employment is affirmed.

Affirmed.

STEIGMANN and COOK, JJ., concur.