BENITA GAY, as Parent and Guardian on behalf of Javarius Gay, a Minor, Plaintiff-Appellant, v. ROGER W. DUNLAP, Defendant-Appellee.

Fourth District  No. 4—95—0262

Argued September 13, 1995.—Opinion filed January 31, 1996.—Rehearing denied May 20, 1996.

COOK, P.J., concurring in part and dissenting in part.

142

John C. Piland, State's Attorney, of Urbana (Alan K. Wittig (argued) and Thomas P. Sweeney, Assistant State's Attorneys, of counsel), for appellant.

James A. Martinkus (argued), of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In December 1993, plaintiff Benita Gay commenced this action for adjudication of paternity and child support. In August 1994, the circuit court of Champaign County found defendant Roger D. Dunlap to be the father of Javarius Gay, born May 20, 1992, by Benita Gay. The issues of support and reimbursement were tried thereafter and on November 16, 1994, the trial court ordered defendant to pay $300 per month in child support. Plaintiff appeals from the trial court's ruling, i.e., certain of defendant's expenditures constituted "repayment of debts that represent reasonable and necessary expenses for the production of income" which may be deducted from his "net income" in determining how much child support he must pay. (750 ILCS 5/505(a)(3)(h) (West 1992).) Defendant has filed a motion to dismiss the appeal as untimely. We deny defendant's motion and reverse and remand in part.

The trial court accepted defendant's affidavit, which listed his 1993 monthly net income as $1,371 per month. (The figure was apparently misread because the trial court used $1,361 (not $1,371) as the base for child support.) The 20% statutory guideline for child support for one child based on net income of $1,361 per month is $262.20 per month. The trial court opted to raise this to $300 per month and made the award retroactive for 10 months.

Defendant's tax returns listed gross income as $31,703. He paid $3,673 in tax (self-employment tax of $2,325, Federal income tax of $945, and State income tax of $403). Subtracting taxes from gross income leaves $28,030. From this, defendant subtracted $10,500 in car expenses and $1,075 in entertainment expenses (a total of $11,575), leaving $16,455 net income. Dividing $16,455 per year by 12 months gives a resultant net income per month of $1,371.25. The $10,500 of car expenses includes $577 per month (or $6,924 for the year) to lease a 1993 Mercedes.

The court's November 16 order has an "x" in the box which indicates the issues of medical reimbursement and retroactive support are to be reserved, but a heavy line has been drawn through the

"x." There is also an "x" in a box next to a statement indicating the cause was to be continued generally. The written order does not contain any language indicating there is no just reason for delaying enforcement or appeal.

Plaintiff filed a motion to reconsider on November 29, 1994. Arguments on the motion were heard and denied on January 9, 1995. At the hearing, defendant moved to dismiss plaintiff's request for medical reimbursement citing *res judicata*. The court denied the motion to dismiss, stating "[t]he items are reserved, until they are brought up." The court continued the issue of medical reimbursement until March 31. On March 31, the request for medical reimbursement was denied because plaintiff offered no testimony on the issue. Plaintiff filed this appeal the same date, March 31, 1995.

Parties have 30 days from a final judgment to file an appeal. When a timely post-trial motion has been filed, the 30 days begin to run only from the trial court's disposition of the motion. (155 Ill. 2d R. 303(a)(1).) In this case, the trial ended on November 16, 1994, at which time the trial court made an oral finding there was "no just reason to delay enforcement of further appeals in this case" (155 Ill. 2d R. 304(a)), which was recorded on the docket sheet. The written order did not include such a finding.

A timely post-trial motion to reconsider was filed. It was denied on January 9, 1995, with the court continuing the issue of medical reimbursement until March 31, 1995. On January 9, the court admitted it was "questionable," in its mind, whether there was a "final and appealable order" with respect to the matters on which the court had already denied the motion to reconsider. On March 31, the court denied the request for medical reimbursement, and this appeal was filed that same day.

Defendant claims this appeal must be dismissed as untimely because the order of November 16 was a final order, disposing of all claims and parties, and the appeal was not filed within 30 days of the January 9 denial of the motion to reconsider.

■ Supreme Court Rule 304(a) allows appeals from orders which do not dispose of all parties and issues if the court makes "an *express written finding* that there is no just reason for delaying either enforcement or appeal or both." (Emphasis added.) (155 Ill. 2d R. 304(a).) The docket sheet entry does not suffice; the language must be present in the written order. Thus, since the court did not make an explicit *written* finding stating the November 16 order was final for purposes of appeal, no appeal had to have been filed until 30 days after March 31 unless the order of November 16 did in fact dispose of all issues and parties, in which case the appeal would have to have

been filed within 30 days of January 9, the date on which the motion to reconsider was denied.

■ The language the trial court used is not determinative of whether the order completely disposed of all issues and parties so an appeal had to be filed within 30 days thereof. (*In re Estate of Devey* (1993), 239 Ill. App. 3d 630, 632, 607 N.E.2d 685, 686.) A judgment is not final unless all which remains to be done, if the judgment is affirmed on appeal, is to execute it. (*Devey*, 239 Ill. App. 3d at 632, 607 N.E.2d at 686.) A paternity ruling is not final for purposes of appeal until the circuit court has ruled on requested relief which is "directly tied to a finding of paternity, such as child support and birth expenses." *People ex rel. Driver v. Taylor* (1987), 152 Ill. App. 3d 413, 415, 504 N.E.2d 516, 517.

■ The trial court believed it had not disposed of all issues, specifically the issue of medical reimbursement, since it continued the case for a hearing thereon until March 31. It admitted on January 9 it was unsure of whether there was a "final appealable order." We conclude there was not, especially in light of the notation on the written order stating the case was to be continued "generally." The trial court did not make the requisite Rule 304 finding, and the case was not completed until March 31, the day on which the appeal was filed. Defendant's motion to dismiss the appeal as untimely is denied.

As this court noted in *Driver*, "[f]orm orders which reserve issues or make reference to issues that may no longer exist cause mischief and confusion." (*Driver*, 152 Ill. App. 3d at 415, 504 N.E.2d at 518.) Overcrowding of the courts makes it difficult for trial courts and counsel to take the time to attend to what might seem to be minutiae. It takes more time to draft an order specific to each case than to use form orders and simply check the appropriate boxes. Consequences of mistakes or ambiguities in the record, whether involving form orders or otherwise, can be severe for the parties involved. Here it provided the threshold issue whether the appeal was timely filed. On the merits, our interpretation of the statute in question will result in a more accurate determination of the net income of noncustodial parents. This will not only affect the rights and responsibilities of the litigants here but also provide the guidance of precedent for others. Trial courts and counsel should take the time to make sure their rulings are accurately reflected by the orders which implement those rulings.

■ A trial court determination of the appropriate level of child support will only be reversed if it is an abuse of the trial court's discretion (*In re Marriage of Alexander* (1992), 231 Ill. App. 3d 950, 953, 596 N.E.2d 1335, 1337), or if the factual predicate for the deci-

sion is against the manifest weight of the evidence. (*Milligan v. Cange* (1990), 200 Ill. App. 3d 284, 294, 558 N.E.2d 630, 637.) However, pure questions of law are subject to *de novo* review. (*Federal Deposit Insurance Corp. v. O'Malley* (1994), 163 Ill. 2d 130, 142, 643 N.E.2d 825, 831; *Travelers Insurance Co. v. First National Bank* (1993), 250 Ill. App. 3d 641, 645, 621 N.E.2d 209, 213.) When facts are not in dispute, their legal effect is a matter of law. *Fitzpatrick v. Human Rights Comm'n* (1994), 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491.

The substance of the appeal revolves around whether the trial court should have allowed defendant to deduct his automobile and entertainment expenses from his income under subsection (a)(3)(h) of section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(3)(h) (West 1992)) to determine his child support obligations. It is a question of the legal effect of undisputed facts, which we review *de novo*. See *Fitzpatrick*, 267 Ill. App. 3d at 392, 642 N.E.2d at 491.

■ Subsection (a) of section 505 authorizes the court to order child support. Subsection (a)(3)(h) reads:

"(3) 'Net income' is defined as the total of all income from all sources, minus the following deductions:

\* \* \*

(h) *Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income*, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." (Emphasis added.) (750 ILCS 5/505(a)(3)(h) (West 1992).)

The trial court allowed the $11,575 to be deducted from defendant's net income under the emphasized portion of this subsection.

■ We reverse the circuit court's rulings allowing deduction of the $1,075 per year spent on meals and entertainment and the $3,576 of car-related expenses for purchases of gas, auto repairs and insurance premiums. We need not reach the issue of whether these expenses are "reasonable and necessary," because they are not expenditures *for repayment of debts*.

The first district has ruled nonreimbursed business expenses are deductible under subsection (a)(3)(h), as long as they are "reasonable and necessary expenses for the production of income." (*Rimkus v. Rimkus* (1990), 199 Ill. App. 3d 903, 910, 557 N.E.2d 638, 643.) We

decline to follow *Rimkus* with respect to this point. The only Illinois authority *Rimkus* cited for its decision was *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005. The *Rimkus* court read *Dwan* to allow the deduction of nonreimbursed business expenses to determine income.

*Dwan* was decided under the 1979 Illinois child support statute (Ill. Rev. Stat. 1979, ch. 40, par. 505(a)), which bears little resemblance to the current version. Specifically, the 1979 version had no guidelines regarding percentage of income for a minimum award of support, and it gave the courts no guidance as to how a parent's "net income" was to be determined. (Ill. Rev. Stat. 1979, ch. 40, par. 505(a).) Whether child support was ordered was totally discretionary, and the "financial resources and needs of the noncustodial parent or parents," without any more specificity, was simply one of five factors for the court to consider when it made its decision. (Ill. Rev. Stat. 1979, ch. 40, par. 505(a)(5).) Other than *Dwan*, *Rimkus* cited two cases outside of Illinois, both of which, like *Dwan*, merely allowed the deduction of normal business expenses in the context of a determination of the noncustodial parent's *ability to pay*. *Rimkus*, 199 Ill. App. 3d at 910, 557 N.E.2d at 643.

The court may still consider the "financial resources and needs of the non-custodial parent" in deciding whether to apply the statutory guidelines. (750 ILCS 5/505(a)(2)(e) (West 1992).) However, we conclude it is inappropriate to take them into account in the initial determination of net income. The legislature could have kept the statute in its 1979 form if it had wished to do so, but it did not. In the context of determining net income, it specifically chose only to allow the deduction of business expenses *for the repayment of debt*. 750 ILCS 5/505(a)(3)(h) (West 1992).

A trial court decision about whether to apply the statutory guidelines involves carefully balancing many factors—not limited to those listed in the statute. (750 ILCS 5/505(a)(2) (West 1992).) The determination of net income, on the other hand, should be a straightforward, rigorous process. The legislature defined "net income," for purposes of the statute, as "the total of all income from all sources," minus the specifically enumerated allowable deductions, which it then proceeded to list. 750 ILCS 5/505(a)(3) (West 1992).

The cardinal rule in statutory construction is to give effect to legislative intent. (*Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822; *Central Illinois Public Service Co. v. Illinois Commerce Comm'n* (1994), 268 Ill. App. 3d 471, 483, 644 N.E.2d 817, 825.) The primary guide as to intent is the language of the statute. (*Solich*, 158 Ill. 2d at

81, 630 N.E.2d at 822.) Words in the statute should be given their popularly understood meaning. (*International Bureau of Fraud Control, Ltd. v. Clayton* (1989), 188 Ill. App. 3d 703, 710, 544 N.E.2d 416, 421, citing *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) Where the statutory language is unclear a court may look beyond it, but where it is clear the court must give it effect. (*Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822.) When the language is unclear, a primary source for construing the statute is the purpose behind the law and the evils the law was designed to remedy. (*Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822.) Courts avoid interpretations which would render part of a statute meaningless or void. (*Bureau of Fraud Control*, 188 Ill. App. 3d at 710, 544 N.E.2d at 421, citing *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 489 N.E.2d 1374.) The presence of surplusage will not be presumed. *People v. Frieberg* (1992), 147 Ill. 2d 326, 349, 589 N.E.2d 508, 519.

It would be contrary to these principles to adopt the position espoused by defendant and adopted in *Rimkus*. Allowing day-to-day business expenses to be deducted under subsection (a)(3)(h) would ignore the language "for repayment of debts." The legislature could have enacted the statute without such language, but it chose to include it. We will not read this language out of the statute when the statute makes perfect sense with it included.

Further, such a holding would also conflict with the second sentence of subsection (a)(3)(h), which provides:

> "The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." (750 ILCS 5/505(a)(3)(h) (West 1992).)

This language would make no sense if business expenses, ongoing and variable from month to month, could be deducted. Nor do we agree with the position advanced by defendant's counsel at oral argument, *i.e.*, this portion of the statute was only intended to apply *if* the expense in question was debt repayment with a definite endpoint. Nothing in the language of the phrase implies it does not apply to some of the deductions allowed by the first sentence. In fact, the word "shall," which appears twice in the phrase, generally connotes legislative intent indicating what follows is mandatory, not permissive. *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1301.

Finally with respect to this point, we note the purpose of subsection (a)(3) (including subsection (h)) is simply to define the noncusto-

dial parent's net income. (750 ILCS 5/505(a)(3)(h) (West 1992).) Subsection (a)(3) is not intended to determine what the "fair" amount of child support is, nor does it have anything to do with how much child support is to be paid. All it does is define net income. Expenses which it would be improper to deduct under subsection (a)(3) can still play a role in a trial court's decision regarding departure from the statutory guidelines. As noted above, "the financial resources and needs of the non-custodial parent" may legitimately be considered in this context. 750 ILCS 5/505(a)(2)(e) (West 1992).

We therefore hold only such expenses as constitute "repayment of debts" may be deducted from net income under the first clause of section 505(a)(3)(h) of the Act, and further hold nonreimbursed business expenses do not fit into this category.

However, simply because an expense falls into the category of a debt repayment does not mean it is deductible. Qualifying as a repayment of debt is a necessary, but not a sufficient, condition for deductibility under subsection (a)(3)(h). Once this hurdle is overcome, the proponent of the deduction must also show the debts being repaid "represent reasonable and necessary expenses for the production of income." (750 ILCS 5/505(a)(3)(h) (West 1992).) The main focus of both parties on appeal was whether this language allowed defendant to deduct $6,924 ($577 per month) for a lease of a 1993 Mercedes automobile.

Relatively few cases have dealt with the subsection (a)(3)(h) "reasonable and necessary" language. In *In re Marriage of Cornale* (1990), 199 Ill. App. 3d 134, 556 N.E.2d 806, this court let stand a trial court ruling stating payments for real estate which did not produce any income at the time were not deductible under subsection (a)(3)(h). (*Cornale*, 199 Ill. App. 3d at 136-37, 556 N.E.2d at 808.) Also in 1990 this court let stand a trial court determination stating a debt incurred in purchasing a plane as a business investment was a business debt. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 850, 551 N.E.2d 737, 743.) This was *dictum*, however, since we went on to hold repayments on the debt should *not* be subtracted from net income because of other factors. (*Hart*, 194 Ill. App. 3d at 850, 551 N.E.2d at 744.) In 1992, the fifth district let stand a holding stating the purchase of a hunting lodge to be used "as a benefit to good customers" of a men's clothing store was deductible under subsection (a)(3)(h), although it went on to add one-half of the payments on the hunting lodge back into net income, because the defendant admitted he and his family personally used the hunting lodge at least 50% of the time. *In re Marriage of Heil* (1992), 233 Ill. App. 3d 888, 892, 599 N.E.2d 168, 171.

In effectuating legislative intent, words in the statute should be given their popularly understood meaning (*Bureau of Fraud Control*, 188 Ill. App. 3d at 710, 544 N.E.2d at 421), looking to the purpose behind the law (*Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822), and attempting to avoid interpretations which would render part of the statute meaningless or void. (*Bureau of Fraud Control*, 188 Ill. App. 3d at 710, 544 N.E.2d at 421.) Keeping these principles in mind, we now turn to the phrase "reasonable and necessary expenses for the production of income."

By the word "necessary" we conclude the legislature did not intend only to describe those expenses without which no income could be generated. "Necessary" admits of a number of different degrees of meaning (Black's Law Dictionary 1029 (6th ed. 1990)), and we cannot assume the legislature meant it so restrictively in the absence of some more definitive indication. However, it would be mere surplusage if it meant nothing more than simply those expenses which the spender in good faith believes will increase his income. We conclude the legislature intended to describe those expenses outlaid by a parent with a good-faith belief his or her income would increase as a result, and which actually did act to increase income, or would have done so absent some extenuating circumstance.

The term "reasonable" means "Not immoderate or excessive" (Black's Law Dictionary 1265 (6th ed. 1990)); "being or remaining within the bounds of reason: not extreme: not excessive" (Webster's Third New International Dictionary 1892 (1986)). Here, we find it applies to the relationship between the amount of the expense and the amount by which income is in good faith expected to increase as a result. This definition implies the same expense could be reasonable in one context and not in another. For instance, a mechanic's $10,000 debt for the purchase of a full set of tools—through which the parent expects his or her income to increase by $7,500 per year—may be reasonable, in contrast to a debt for the same amount incurred on the expectation of earning $5 to $10 per week doing odd jobs for neighbors.

■ In the circumstances of this case, we find no evidence was adduced in the trial court regarding the extent to which defendant's use of a Mercedes, as opposed to some other car, was believed to affect his income. We do not suggest it is unreasonable for the defendant to lease a vehicle. However, the amount of the monthly lease payment is significant. We therefore remand to the trial court for a hearing on whether this car lease is in fact a "reasonable and necessary expense[ ] for the production of income."

For the reasons given above, we reverse and hold the food and

entertainment and auto-related expenses exclusive of the Mercedes lease are not deductible under subsection (a)(3)(h), and reverse and remand for a determination of whether the auto lease is a "reasonable and necessary expense[ ] for the production of income."

Reversed and remanded in part with directions.

STEIGMANN, J., concurs.

PRESIDING JUSTICE COOK, concurring in part and dissenting in part:

I agree with much of what is said in the majority opinion, but disagree that a deduction should be allowed in any event for the purchase or lease of a vehicle.

Defendant is self-employed as a realtor through Coldwell Banker Hallmark Realty, Inc. (Coldwell Banker). He also has interests in numerous properties which, although they produce some income, result in a net loss for tax purposes. Defendant's 1993 Federal income tax return, schedule C, shows "gross receipts or sales" in the amount of $31,703. That figure was reported to the Internal Revenue Service by Coldwell Banker on a form 1099-Misc as nonemployee compensation. In fact, the total commissions from defendant's 1993 sales were $48,929.40. The $31,703 is a net figure, after Coldwell Banker deducted its share. Coldwell Banker supplies defendant with an office and pays expenses such as rent, utilities, and secretarial help from its share. Although defendant is self-employed, the $31,703 paid to him by Coldwell Banker is very much like the wages and salary paid to an employee and reported on form W-2.

On his schedule C, defendant listed expenses for advertising, car and truck expenses ($10,500), depreciation, legal and professional services, office expense, supplies, meals and entertainment ($1,075), and other expenses. Defendant's schedule C lists total expenses of $15,249. To determine his net income for child support purposes, defendant asked that the $31,703 be reduced by $10,500 (his car and truck expenses), and by $1,075 (his meals and entertainment), plus taxes paid of $3,673. The trial court agreed those deductions could be made and accordingly calculated the child support per guidelines to be $262.20, but awarded $300 per month.

In setting child support by use of the guidelines, the key determination is the calculation of the payor's net income. The legislature has wisely chosen not to use net income as shown on a payor's tax returns. In many cases, one example being where a taxpayer has a loss carryover from prior years, net income as shown on tax returns

does not adequately measure an individual's current ability to pay child support. Section 505(a)(3) expresses a legislative intent to limit the deductions which may be made in calculating net income.

Section 505(a)(3) of the Act is nevertheless a troublesome provision. Section 505(a)(3) purports to compute net income by starting with the broadest possible figure, "the total of all income from all sources" (750 ILCS 5/505(a)(3) (West 1992)), and then subtracting only the deductions which it lists. It seems clear there are obvious deductions which are not listed. For example, how is net income calculated for a merchant engaged in the sale of goods? Under section 505(a)(3) the court must begin with the total of the merchant's receipts from sales. Can there be a deduction for cost of goods sold? The only listed deduction which might apply is section 505(a)(3)(h), but that seems overly restrictive. There should be a deduction for cost of goods sold even if the merchant pays cash for them, even if there is no "repayment of debts," and even if the expense is a continuing one. I conclude the legislature intended to allow such obvious deductions even without specific language in section 505(a)(3). In the present case, for example, defendant was not required to include the total commissions he earned and was entitled to a credit for the share taken by Coldwell Banker, including amounts it paid for his office expenses.

I agree with the majority that the deductions listed in section 505(a)(3) were intended to be limited. Defendant is not entitled to deduct his entertainment expenses or his gasoline expenses, whether or not there is a "repayment of debt." An individual who charges such expenses (and thereby incurs a debt) is not entitled to a deduction where one who pays cash is not. Section 505(a)(3)(h) is limited to extraordinary, large ticket, nonrecurring expenses. That is borne out by the nature of the debts considered by previous cases interpreting section 505(a)(3)(h)—debt incurred in purchasing a plane in *Hart*, debt incurred in the purchase of a hunting lodge in *Heil*, and debt incurred in purchasing real estate in *Cornale* (there disallowed).

I disagree with the majority that the cost of leasing or purchasing a vehicle could ever be deducted under section 505(a)(3)(h), whether or not it is "reasonable and necessary." Almost everyone has vehicle expenses; such expenses are not of the extraordinary nature required for deduction under section 505(a)(3)(h). For most people there will never come a time when the cost of acquiring vehicles is at an end, and child support payments could automatically return to their full level. (750 ILCS 5/505(a)(3)(h) (West 1994) ("self-executing modification upon termination of such payment period").) In most cases, an employee who receives a paycheck should not

152

be entitled to any deduction under section 505(a)(3)(h). In this case defendant, although said to be self-employed, is very much like the rest of us who receive a paycheck.

I disagree with the majority's apparent encouragement of courts to depart from the guidelines in order to consider what a fair amount of child support would be after deduction of expenses which cannot be deducted from net income under section 505(a)(3). The guidelines are valuable because they provide a definite figure in most cases, among other things saving the time of the parties and the courts. The guidelines will lose that value if courts routinely go beyond them, and this is not a case where that should be required.

I agree this decision should be reversed and remanded, but I would not direct the trial court to consider whether lease payments on the 1993 Mercedes are reasonable and necessary deductions for the production of income. Instead, I would direct the trial court not to allow any deductions for car expenses and to award child support at the guidelines amount.