January 28, 1999

No. 4-98-0401

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In Re: the Marriage of ) Appeal from

DARLENE K. DEMATTIA, ) Circuit Court of

Petitioner-Appellee, ) Livingston County

and ) No. 97D32

JAMES DEMATTIA, )

Respondent-Appellant. ) Honorable

) Charles H. Frank,

) Judge Presiding.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In February 1997, petitioner, Darlene K. Demattia, requested the court dissolve her mar­riage to respon­dent, James Demattia.  In December 1997, the parties entered into a parenting agreement (Agreement) whereby, among other things, they agreed to joint cus­to­dy of their three children with Darlene as pri­ma­ry physi­cal cus­to­dian.  On Janu­ary 2, 1998, the court entered a judgment of disso­lution of mar­riage incorporating the Agree­ment's terms and awarding Darlene monthly child sup­port of $714 pursu­ant to section 505 of the Illi­nois Marriage and Dis­solu­tion of Mar­riage Act (Act) (see 750 ILCS 5/505(a)(1) (West 1996)).  James ap­peals, argu­ing the trial court erred when it re­fused to devi­ate downward from the statutory guide­line.  We dis­agree and af­firm.

 I. BACKGROUND

The parties were married in June 1985 and had three children during their marriage: Bradley (August 14, 1987), Alex (October 12, 1992), and Eric (September 29, 1994).  In Feb­ru­ary 1997, Darlene filed a peti­tion for dis­so­lu­tion of the mar­riage.  At this time, both parties worked at the Dwight Cor­rec­tional Center.  Darlene worked the first shift from 7 a.m. to 3 p.m., Tues­day through Sat­ur­day, while James worked the second shift from 3 p.m. to 11 p.m., Mon­day through Fri­day.  The parties earned sub­stan­

tial­ly similar incomes.

In June 1997, Darlene petitioned the court for tempo­rary relief, request­ing custody of the chil­dren and child sup­port.  Her petition alleged James moved out and the chil­dren lived with her in the marital resi­dence.  In July 1997, the court granted Darlene tem­porary custody and child sup­port, with­holding $756 per month from James' pay­check.

At a No­vem­ber 1997 hearing, the parties presented the court with the Agreement.  Be­sides di­vid­ing the mari­tal prop­erty, the Agree­ment provided the follow­ing: (1) the par­ties had joint cus­

to­dy of the chil­dren; (2) Darlene was the pri­ma­ry phys­i­cal cus­to­

dian; (3) each party had equal au­thori­ty over the children's edu­

ca­tion, reli­gion, and health; (4) each party had equal access to the children's medical and educa­tional re­cords; and (5) James was required to main­tain the children's medi­cal in­sur­ance and share all medi­cal ex­pens­es equally.

Fur­ther, the Agreement provided James with the follow­ing visitation rights: (1) Tues­day through Fri­day from 6 a.m. to 2 p.m., which accom­mo­dated Darlene's work sched­ule; (2) every other week­end from 10 a.m. on Saturday to 7 p.m. on Sunday; and (3) the Satur­days Darlene worked from 6 a.m. to 4 p.m.  Holi­days and birth­days were di­vided equal­ly and each party re­ceived 30 days of vaca­tion time through­out the year.

After revealing the details of the Agreement to the court, James ar­gued his child sup­port obli­ga­tion should be less than the statutory guide­line based on his role as day-care pro­vider four days per week.  The court con­clud­ed James' ex­tend­ed visi­ta­tion time did not re­quire a downward devi­ation from the stat­u­tory guide­line.  James' monthly gross income was $3,034, with monthly de­duc­tions for taxes, social security, insurance, and union dues to­taling $802.40.  Thus, the court set James' child sup­port at 32% of his net in­come of $2,231.60, or $714 per month.  See 750 ILCS 5/505(a)(1) (West 1996).  The court divided tax ex­emp­tions for the children equal­ly be­tween the par­ties.

In December 1997, the parties filed the Agreement with the court.  ­In Janu­ary 1998, the court en­tered the judg­ment of dis­so­

lu­tion of mar­riage, incor­po­rating its rul­ings with the Agree­ment.  In Feb­ruary 1998, James filed a motion to recon­sider, which included updated financial information.  In April 1998, the court de­nied the motion.  This ap­peal fol­lowed.

II. ANALYSIS

On appeal, James con­tends his child support obligation should be re­duced below the statutory guideline be­cause he and Darlene both pro­vide the children's pri­ma­ry care.  See 
In re Mar­

riage of Duerr
, 250 Ill. App. 3d 232, 238, 621 N.E.2d 120, 125 (1993); 
In re Mar­riage of Keown
, 225 Ill. App. 3d 808, 813,  587 N.E.2d 644, 647 (1992); 
In re Mar­riage of Flemming
, 143 Ill. App. 3d 592, 599, 493 N.E.2d 666, 671 (1986).  He as­serts the court erred as a matter of law by refusing to deviate downward from the 32% statutory guide­line (see 750 ILCS 5/505(a)(1) (West 1996)).

Because James initially contends the court erred as a matter of law, we review this contention 
de
 
novo
.  See 
Gay v. Dunlap
, 279 Ill. App. 3d 140, 145, 664 N.E.2d 88, 92 (1996).  We find the law enunciated in 
Duerr
, 
Keown
, and 
Flemming
 inap­pli­ca­ble be­cause those cases in­volve instances when each party was the pri­ma­ry cus­to­dian for at least one of their chil­dren.  In these "split custody" cases, the Act's stat­utory guide­lines are not nec­es­sar­

ily ap­pli­cable.  See 
Keown
, 225 Ill. App. 3d at 813-14,  587 N.E.2d at 647-48.  Here, howev­er, the parties agreed to joint custo­dy of the children with Darlene as the pri­mary phys­ical cus­

to­di­an.  She is primarily responsi­ble for the chil­dren and the guide­lines ap­ply.

Section 505 of the Act creates a rebuttable presumption the specified percentage of a noncustodi­al parent's in­come rep­re­sents an appropriate child support award.  See 
In re Mar­riage of Charles
, 284 Ill. App. 3d 339, 346-47, 672 N.E.2d 57, 63 (1996).  This presumption cannot be negated 
un­less
 compelling evi­dence shows reason for the devi­at­ion.  See 
In re Mar­riage of Stan­ley
, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996).  Rele­

vant fac­tors for the court to consider in­clude, but are not lim­

ited to, (1) the financial resourc­es of the chil­dren; (2) the fi­

nan­cial resources and needs of the custodi­al parent; (3) the children's standard of living during the mar­riage; (4) the phys­i­

cal and emo­tional condi­tion of the children and their educa­tion­al needs; and (5) the finan­cial resourc­es and needs of the non­cus­

todial parent.  See 750 ILCS 5/505(a)(2) (West 1996); I
n re Mar­

riage of Phil­lips
, 244 Ill. App. 3d 577, 594, 615 N.E.2d 1165, 1178 (1993).

Section 505 does not in­clude a pro­vi­sion ad­dressing joint custo­dy cases when the non­cus­to­di­al par­ent receives extend­ed visitation rights with the chil­dren.  
Cf
. 
Remson v. Remson
, 672 So. 2d 409, 414 (La. App. 1996) (applying La. Rev. Stat. Ann. §9:315.8E (West 1991)); 
Gray v. Gray
, 885 S.W.2d 353, 356 (Tenn. Ct. App. 1994) (ap­ply­ing Department of Human Service regulation §1240-2-4-.02-7 of the Tennessee Child Sup­port Guide­lines); 
Terpstra v. Terpstra
, 588 N.E.2d 592, 596 (Ind. App. 1992) (ap­

plying Indiana Child Support Guideline 1).  The trial court may certainly con­sider James' extended visi­ta­tion rights, but the law does not mandate a down­ward deviation nor was the court obli­gated to make an ex­press find­ing re­gard­ing this is­sue.  See 
Charles
, 284 Ill. App. 3d at 347, 672 N.E.2d at 63 (the trial court is only re­quired to express find­ings when it devi­ates from the guide­lines).  Ac­cord­ing­ly, the court did not err as a mat­ter of law.

James also contends the court abused its dis­cre­tion be­cause the evi­dence sup­port­ed a down­ward devi­a­tion of the stat­uto­ry guide­line.  In his brief, James cites facts argued by his attorney during the November 1997 hearing.  These facts were apparently introduced as evidence during the July 1997 tem­po­rary cus­to­dy hear­ing, but a transcript of the hearing was not in­clud­ed in the appellate record.  Any doubts aris­ing from this in­com­plete record are resolved against James.  See 155 Ill. 2d R. 321; 
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 546-47, 662 N.E.2d 1248, 1258 (1996).

James alleges he is sav­ing Darlene day-care ex­pens­es by watching the chil­dren four days per week.  He further contends he provides primary care for the children 10 out of 14 days for at least 8 hours per day.  There­fore, his child sup­port obli­ga­tion should have been re­duced below the stat­utory guide­line.  A simi­

lar down­ward devia­tion of the statu­tory guide­line was found not to be an abuse of discre­tion.  See 
In re Mar­riage of Reppen-

Sonneson
,   299 Ill. App. 3d 691, 695, 701 N.E.2d 1159, 1162 (1998).

A departure from the guide­lines must be sup­port­ed by the record.  See 
In re Mar­riage of Meyer
, 140 Ill. App. 3d 1031, 1036, 489 N.E.2d 906, 910 (1986).  Here, the record is in­suf­fi­

cient to require such a deviation.  The evidence revealed (1) both par­ties earn sub­stan­tially the same income; (2) Darlene has assumed the mort­gage on the mari­tal resi­dence, com­pensating James for his in­ter­est in the proper­ty; and (3) Darlene is solely re­

spon­si­ble for maintain­ing the children's standard of living.  Further, two of the children attend school nine months out of the year, thereby reducing James' perceived burden considerably.

According to James' original financial affida­vit, his monthly expenses, including child support, were approxi­mate­ly $2,000 while his monthly net income was found to be $2,231.60, thereby leaving him $231 per month for addi­tion­al ex­penses.  Nothing in the record indicates a down­ward devi­a­tion from the guide­line was war­ranted based on financial hardship suf­fered by James.  
Cf
. 
Phil­lips
, 244 Ill. App. 3d at 595, 615 N.E.2d at 1178.  In fact, Darlene paid James $5,500 for his in­terest in the marital residence when she assumed the mort­gage.  More­over, al­

though James conceivably in­curs some addi­tion­al costs tak­ing care of the chil­dren, these costs are not shown to be excessive or un­

com­mon.  Rath­er, these appear to be normal costs asso­ciat­ed with a joint cus­tody ar­rangement.

We also note day-care expenses would not nec­es­sar­i­ly be included in James' child sup­port payments.  See 
In re Mar­riage of Serna
, 172 Ill. App. 3d 1051, 1054, 527 N.E.2d 627, 629 (1988).  In 
Serna
, this court stat­ed the trial court did not abuse its dis­cretion when it re­quired the noncusto­dial father to pay half of the child care costs in addi­tion to child support as deter­

mined under the statutory guide­lines.  The 
Serna
 court noted the two par­ties had sub­stan­tial­ly the same in­come and day care was neces­sary because both par­ties worked full-time.  See 
Serna
, 172 Ill. App. 3d at 1054, 527 N.E.2d at 629.  The trial court could have increased James' support obligation to compen­sate for any day care Darlene required.

Although both par­ties are finan­cially respon­si­ble for sup­

port­ing the chil­dren (see 
In re Marriage of Maczko
, 263 Ill. App. 3d 991, 994, 636 N.E.2d 559, 562 (1992)), Darlene is the party re­spon­si­ble for main­tain­ing their stan­dard of liv­ing.  The record indicates James' child support pay­ments, in addition to Darlene's income, goes to­ward the mort­gage, utilities, food, car pay­ments, and the children's cloth­ing.  No evidence exists Darlene is re­

ceiv­ing a fi­nan­cial wind­fall from the child support pay­ments.  James is po­ten­tial­ly sav­ing him­self half of the costs of day care Darlene would have in­curred had James been unable to provide day care four days per week.  See 
Serna
, 172 Ill. App. 3d at 1054, 527 N.E.2d at 629.

We do not suggest a trial court could never devi­ate down­ward from the guide­lines based on the noncustodial parent's ex­tend­ed provision of care for his or her children.  We do not seek to dis­cour­age noncus­to­dial par­ents from having sub­stan­tial con­tact with their chil­dren.  The benefit a noncustodial parent receives from having substantial involvement with his or her children cannot be measured by dollars.  There should not be an 
automatic
 deduction in child support because a noncustodial par­ent has the opportunity to spend substantial time with the chil­dren and fulfill a parental responsibility.  Caring for one's own children is not day care nor is it a chore for which to be com­pen­sated.  Our decision is not a criticism of respondent for asking this interesting question, but we decline the invitation to add a new layer of complexity to custody and support deci­sions.  Our deci­

sion is lim­it­ed to the facts in this case.

Courts should encourage arrangements such as this one.  Both par­ties have coop­erated well, their separa­tion ap­pears ami­ca­ble, and their work schedules accommodate their children's lifestyle.  The children's best in­ter­ests are served by spending substantial time with each parent.  So long as the par­ties remain cooper­a­

tive, joint custody is an ap­pro­pri­ate parenting arrange­ment.  According­ly, we find the trial court's deci­sion was not con­trary to the mani­fest weight of the evi­dence.  See 
Gay
, 279 Ill. App. 3d at 144-45, 664 N.E.2d at 92.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur­.