INTERNATIONAL BUREAU OF FRAUD CONTROL, LTD., Plaintiff-Appellant and Cross-Appellee, v. GARY L. CLAYTON, Director of the Department of Registration and Education, *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District   No. 4—88—0792

Opinion filed September 14, 1989.

704

Richard W. Cosby, of Cosby & Bell, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, International Bureau of Fraud Control, Ltd. (IBFC), brought a declaratory judgment action, seeking a determination that its activities in collecting bad checks were not debt collection pursuant to the Collection Agency Act (Act) (Ill. Rev. Stat. 1987, ch. 111, par. 2001 et seq.). IBFC also sought a declaration that section 3—806 of the Uniform Commercial Code—Commercial Paper (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 3—806) did not limit the imposition fees and costs in excess of $10 to collections involving court proceedings. It sought a declaration that it could recover its reasonable costs from the drawer. IBFC also sought to enjoin the Illinois Department of Registration and Education and its director (DRE) from seeking sanctions against IBFC's license for collecting excessive service fees.

Both parties moved for summary judgment. The trial court found no disputed issues of fact existed. It held IBFC was acting as a collection agency under the Act. It also found section 3—806 of the UCC did not limit the service fee charged to the drawer in a nonlitigation

collection to $10. IBFC appeals, arguing collecting cash for bad checks is not debt collection. DRE cross-appeals, arguing the trial court erred in construing section 3—806 of the UCC. We affirm in part, reverse in part, and remand.

The facts are undisputed. IBFC is a licensed collection agency, whose sole activity is reducing to money checks which have been returned to the payee because the drawer did not have an account with the drawee bank or did not have sufficient funds to cover the check. IBFC's principal clients are retail merchants and service providers to retail merchants. Upon specific referral, IBFC contacts the drawer of the dishonored check and requests he make good the check by paying IBFC as agent for the payee. Funds thus received are sent to the payee after fees, costs, and expenses are deducted.

IBFC attempts to collect money for the checks only after the drawer's bank has notified the drawer of the dishonor and the payee has sent out one or more written notices of dishonor to the drawer and demanded payment. In addition to the written notice, according to the payee's business practice, it may have orally communicated the notice of dishonor to the drawer and orally demanded payment. In most cases, the drawer will have been contacted by an agency which collects debts and bad checks. After the drawer fails to act in response to the notices and actions of the payee's collection agency, the matter is handled by IBFC.

Approximately 90% of the checks referred to IBFC are two to six years old. IBFC incurs costs and expenses in seeking payment for the dishonored checks. It seeks reimbursement for these expenditures from the drawers. On July 16, 1986, the DRE sent IBFC a letter stating its expense recovery from the drawer in nonlitigation collections was limited to $10 pursuant to section 3—806 of the UCC. (Ill. Rev. Stat. 1987, ch. 26, par. 3—806.) The IBFC instituted the instant action.

Before we address the merits of the cause, we must first address the DRE's contention that the trial court and this court lack jurisdiction to entertain this cause as it is barred by sovereign immunity. The DRE argues the action is an action against a State agency and public official who were acting in the exercise of their official duties.

■■ Technically, sovereign immunity has been abolished in Illinois, except as the General Assembly may provide by law. (Ill. Const. 1970, art. XIII, §4.) Section 1 of "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1987, ch. 127, par. 801) provides the State may not be a defendant except as provided in the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1601 et seq.) and

the Court of Claims Act (Ill. Rev. Stat. 1987, ch. 37, par. 439.1 *et seq.*). The Court of Claims has exclusive jurisdiction over all tort actions against the State. (*Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 498 N.E.2d 267.) Thus, sovereign immunity precludes actions against State agencies or public officials acting pursuant to their lawful authority. (*Board of Trustees of Community College District No. 508 v. Burris* (1987), 118 Ill. 2d 465, 515 N.E.2d 1244.) However, where an action against an agency or official alleges an unwarranted assumption of authority, the action is not an action against the State. (*Board of Trustees*, 118 Ill. 2d 465, 515 N.E.2d 1244; *Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 481 N.E.2d 1004.) Where the action is to enjoin a public official from acting in excess of his authority in the future, the trial court has jurisdiction and principles of sovereign immunity do not apply. *Board of Trustees*, 118 Ill. 2d 465, 515 N.E.2d 1244; *Hernandez*, 135 Ill. App. 3d 372, 481 N.E.2d 1004.

■ In the instant case, the IBFC is seeking an interpretation of a statute, determination that its activities are not debt collection, and an injunction to preclude the DRE and its director from future actions in excess of their authority. Sovereign immunity concepts do not, therefore, apply. *Board of Trustees*, 118 Ill. 2d 465, 515 N.E.2d 1244; *Robb*, 147 Ill. App. 3d 710, 498 N.E.2d 267; *Hernandez*, 135 Ill. App. 3d 372, 481 N.E.2d 1004.

The IBFC argues its service of collecting cash for checks which have been dishonored based upon insufficient funds or lack of an account with the drawee is not "debt collection" within the meaning of the Act. It notes the Act does not specifically say a dishonored check is a debt, the legislative history of the Act does not define dishonored checks as debts, and no other statute defines a dishonored check as a debt. The IBFC also states the legislature has provided special penalties for those who dishonor checks under the instant circumstances. Therefore, it argues the legislature distinguished the dishonored check under these circumstances from ordinary debt.

Section 2.02 of the Act defines collection agencies as:

> "[A]ny person, association, partnership or corporation who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged debt." (Ill. Rev. Stat. 1987, ch. 111, par. 2004.)

The Act does not apply to persons whose collection activities are directly related to their business. It specifically excepts banks, credit unions, abstract companies, real estate brokers, attorneys, insurance companies, loan companies, condominium associations, and retail merchants who collect their own accounts. Ill. Rev. Stat. 1987, ch. 111,

par. 2005.

An entity acts as a collection agency pursuant to section 3(a) of the Act when it "[e]ngages in the business of collection for others of any account, bill or other indebtedness." (Ill. Rev. Stat. 1987, ch. 111, par. 2006(a).) The Act further provides for registration of collection agencies, the posting of a bond, and makes several types of activities unlawful. (Ill. Rev. Stat. 1987, ch. 111, pars. 2007, 2011, 2012 through 2033.) The purpose of the Act is to make unlawful abusive collection practices. (E. Malstrom, *The Illinois Collection Agency Act*, 1975 U. Ill. L.F. 441.) The Act does not define "account, bill, or other indebtedness." It does not define "debt." *People ex rel. Daley v. Datacom Systems Corp.* (1988), 176 Ill. App. 3d 697, 531 N.E.2d 839.

■ The IBFC first contends a dishonored check is not a debt. It does not seek to collect for the debt underlying the check. Therefore, under the plain language of the Act, collecting cash for dishonored checks is not debt collection. Consequently, we must consider the nature of debts as well as the relation established by the issuance of a check. Debt is defined as "[a] sum of money due by certain and express agreement." (Black's Law Dictionary 363 (5th ed. 1979).) "Indebtedness" in a broad sense is anything that is due and owing. Black's Law Dictionary 691 (5th ed. 1979).

■ We turn now to a consideration of checks. Generally, a check given in exchange for a service or good is a written promise to pay the underlying obligation. (*Leavitt v. Charles R. Hearn, Inc.* (1974), 19 Ill. App. 3d 980, 312 N.E.2d 806.) The UCC defines a check as a draft or order upon a bank signed by the maker for the payment of a sum certain from the drawer's account to a definite person or bearer, which is due upon demand. (Ill. Rev. Stat. 1987, ch. 26, par. 3—104; *Economy Fuse & Manufacturing Co. v. Standard Electric Manufacturing Co.* (1935), 359 Ill. 504, 194 N.E.2d 922.) Payment for goods may be made by check. (Ill. Rev. Stat. 1987, ch. 26, par. 2—511.) However, such payment is conditional and is defeated by dishonor of the check. (Ill. Rev. Stat. 1987, ch. 26, par. 2—511(3).) The drawer is responsible for the payment of the dishonored check (Ill. Rev. Stat. 1987, ch. 26, par. 3—413(2)), and the payee has an immediate action against the drawer upon dishonor and notice of dishonor (Ill. Rev. Stat. 1987, ch. 26, par. 3—507(2)).

The drawer may discharge his liability on the instrument by payment or any act which discharges his promise to pay the money. (Ill. Rev. Stat. 1987, ch. 26, par. 3—601.) Additionally, section 3—802(b) of the UCC provides that if a check is dishonored, an action may be maintained on the instrument or on the obligation. Discharge of the

obligor on the instrument discharges him on the obligation. (Ill. Rev. Stat. 1987, ch. 26, par. 3—802(b).) Therefore, any action which discharges the drawer on the instrument discharges him on the obligation.

■ ■ "Obligation" is synonymous with "debt." (Roget's II The New Thesaurus 234 (1980).) We conclude that when a check is given in payment for goods or services and is dishonored, the relation of debtor-creditor is established between the drawer and the payee of the check. (See generally *Calvin Watson Motor Sales v. Devaull* (1964), 51 Ill. App. 2d 125, 201 N.E.2d 1.) IBFC's actions in reducing to cash checks which have been dishonored discharges liability on the instrument and the obligation underlying it. Thus, it is the collection of an indebtedness under the Act.

■ IBFC argues the legislature's treatment of checks dishonored for insufficient funds or lack of an account indicates it distinguished these situations from ordinary debt. IBFC contends the legislature did not intend to afford the protection of the Act to drawers in such circumstances. We disagree. If the requisite mental state is found, a person issuing a check under the instant circumstances may have committed a deceptive practice. (Ill. Rev. Stat. 1987, ch. 38, par. 17—1.) The drawer who commits a deceptive practice may be liable to the payee for triple the amount of the check or for between $100 and $500 in addition to criminal liability. (Ill. Rev. Stat. 1987, ch. 38, par. 17—1a.) However, not all persons who issue checks which are dishonored for insufficient funds have committed deceptive practices. The fact that fraudulent conduct is punishable does not mean the legislature intended to exclude all drawers of dishonored checks from the protection afforded by the Act.

We turn now to the cross-appeal. The DRE argues the trial court erred in its interpretation of section 3—806 of the UCC. (Ill. Rev. Stat. 1987, ch. 26, par. 3—806.) Section 3—806 states:

"Any person who issues a check or other draft which is not honored upon presentment because the drawer does not have an account with the drawee, or because the drawer does not have sufficient funds in his account, or because the drawer does not have sufficient credit with the drawee, *shall be liable in the amount of $10, or for all costs and expenses, including reasonable attorney's fees, incurred by any person in connection with the collection of the amount for which such check or other draft was written, whichever is greater, and shall be liable for interest upon the amount of such check or other draft* \* \* \*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 26, par. 3—806.)

The trial court found the phrase "costs and expenses" referred to in the statute need not relate to litigation or be awarded by the court.

The primary rule of statutory construction is to ascertain and effectuate the legislature's intent in drafting the statute. (*Faheem-El v. Klincar* (1988), 123 Ill. 2d 291, 527 N.E.2d 307.) In doing so, the entire statute must be considered, as well as the evil to be remedied or the object to be attained by the statute. (*City of Decatur v. American Federation of State, County & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219.) The language of the statute should be first considered. If the language is clear, the court should not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) The words should be given their popularly understood meaning. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) Courts avoid interpretations which would render any portion of the statute meaningless or void. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 489 N.E.2d 1374.) When a statute employs words having a well-known legal significance, courts will, absent an expression to the contrary, assume that the legislature intended the words to have that meaning. *Harris*, 111 Ill. 2d 350, 489 N.E.2d 1374.

With these principles in mind, we consider the instant statute. The words "costs" and "expenses" in their popularly understood sense are synonyms. (Webster's Third New International Dictionary 515, 800 (1961).) "Costs" also has a well-known legal significance. It refers to litigation expenses awarded by the court to a successful party. (Black's Law Dictionary 312 (5th ed. 1979).) Therefore, using the popular meaning of the terms and not tying them to litigation creates a redundancy in the statute. Such a result should be avoided. (*Harris*, 111 Ill. 2d 350, 489 N.E.2d 1374.) However, if the term "costs" is given its well-known legal significance, the redundancy is eliminated. We believe the phrase "costs and expenses" referred to in the statute means those court costs and expenses which are awarded by the court after litigation.

IBFC urges this court to consider only the language of the statute in seeking the legislative intent. We note an ambiguity exists in the statute, since the ordinary meaning of the words differs from their legal significance. Therefore, we will consider the legislative history. The legislative history supports a conclusion that costs and expenses are tied to litigation. Representative Klemm in introducing the legislation stated:

"House Bill 2536 defines ten dollars as the maximum the re-

tailer may charge without going to court. This will eliminate the necessity of a merchant to prove his actual cost each time he collects a fee of under ten dollars for dishonored checks. This is a maximum amount and does not require merchants to charge any specific fee, and I move its adoption." (82d Ill. Gen. Assem., May 13, 1982, at 190 (statements of Representative Klemm) (debates on House Bill 2536).)

Senator Sangmeister stated:

"House Bill 2536 amends the Uniform Commercial Code and very simply establishes that on an NSF check that a retailer would have the fixed sum of ten dollars as his cost for attempting to redeem or make good the check that has been presented to him which has gone bad. He has that alternative *or* to go to court and get whatever costs the court may give, but it would set ten dollars as the fee." (Emphasis added.) 82d Ill. Gen. Assem., June 23, 1982, at 124 (statements of Senator Sangmeister) (debates on House Bill 2536).

We conclude the drawee's liability pursuant to section 3—806 is limited to $10 or the actual cost and expenses incurred in litigation to collect upon the amount of the check. Therefore, for the above reasons, we affirm in part, reverse in part, and remand.

Affirmed in part; reversed in part and remanded.

LUND and GREEN, JJ., concur.