THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SELECT SPECIALTIES, LTD., f/k/a Shermer Specialties, Selections, Ltd., *et al.*, Defendants-Appellees.

Fourth District    No. 4—99—0976

Argued October 25, 2000.—Opinion filed December 6, 2000.—Rehearing denied January 5, 2001.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Marcia L. McCormick (argued), Assistant Attorney General, of counsel), for appellant.

James P. Baker (argued), of Law Offices of James P. Baker, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:
In March 1996, the State brought an enforcement action against

the defendants, Select Specialties, Ltd.; Chateau Wines Ltd.; Robert Popovich; and Sheryle Henry, alleging they violated the Illinois Liquor Control Act of 1934 (Act) (235 ILCS 5/1—1 *et seq.* (West 1996)) by promoting wines through furnishing samples to the public, exposing wines for sale, and taking orders for wine at public events without a liquor license. The trial court denied the State's motion for summary judgment and granted defendants' request for summary judgment. The trial court found the Act did not specifically require defendants to have a liquor license before engaging in the complained-of conduct. The State appeals. We reverse and remand with directions.

## I. BACKGROUND

In 1989, Popovich created Chateau Wines, Ltd. (Chateau), which sold wine to consumers under a valid liquor license. In June 1994, Popovich created a second company, Shermer Specialties, Selections, Ltd., also to sell wine to consumers. In July 1994, the Illinois Liquor Control Commission (Commission) granted a liquor license to this second company. Popovich soon changed the name of the second company from Shermer Specialties, Selections, Ltd., to Select Specialties, Ltd. (Select).

In August 1994, the Commission revoked Popovich's liquor license for Chateau because he failed to file tax returns and pay retailer's occupation tax. The Commission then instituted proceedings to revoke Popovich's second liquor license for Select based on revocation of his first license. A few days later, Menard County revoked Popovich's county liquor license based on the Commission's revocation. In September 1994, defendants changed the registered agent of Select from Popovich to Henry. Popovich, Henry, and Select argue Henry was the sole proprietor of Select by December 1994. Henry has never applied for a state liquor license. In October 1994, the Commission revoked Popovich's liquor license for Select.

In March 1995, Henry applied to hold a concession at the Illinois State Fair. In July 1995, Henry applied for a temporary liquor license from Sangamon County for Select to use at the Illinois State Fair. No evidence suggests Henry applied for a state liquor license. Sangamon County issued a temporary liquor license, which was to expire August 21, 1995. The State argues Popovich, Henry, and Select took orders at the Illinois State Fair between August 11 and 20, 1995. The State argues defendants took invoices, which had the name and address of Select at the top, by tallying the wine order, figuring shipping and total price, and specifying a method of payment.

Popovich denied any sale of wine took place at this event. Defendants argue they merely "promoted" the wines of Connoisseur

Encounters Company, Inc. (Connoisseur). Connoisseur, a licensed retailer of alcohol products, sells wine through its Shermer Specialties Division from a business location in Northbrook, Illinois. Connoisseur's wine promoters typically promote through public or private showings of wines. Connoisseur informs the event sponsor the individual promoting the wine does so with the explicit approval of the company and no actual sales will take place at the event.

Defendants argue Connoisseur's wine promoters do not have the authority to enter into sales or bind Connoisseur to any contract. Instead they (1) display the wine products of the company, (2) explain and describe those products, (3) and offer samples of wine in less than one ounce. If an individual expresses interest in purchasing wine, then he or she fills out a "preference form." Defendants transmit the form to Connoisseur and Connoisseur determines if it will accept the preference and make the sale by invoicing the customer, receiving payment, and delivering the order. Defendants testified they cannot accept money, deliver merchandise, or commit Connoisseur to effect a sale of its product, and they are only independent contractors of Connoisseur. Connoisseur compensates a promoter for each individual referred to it through the preference process. Defendants testified Connoisseur made its practice of using promoters known to the Commission.

On August 18, 1995, Jack Hoban, an investigator with the Illinois Attorney General's office, went to Select's booth at the Illinois State Fair. Popovich stated Hoban attempted to pay for wine at the booth, but Popovich informed him he must fill out a preference form. Popovich would then send the form to Connoisseur. Defendants then showed Hoban some wines and Hoban filled out a form in which he selected 12 bottles of wine to be shipped cash on delivery. After this transaction, an investigator for the Commission inspected the booth. After finding it did not have a state liquor license, he shut the booth down. The State also alleged Popovich sold wine at an earlier event in 1995 and from a graphic design studio known as Kopy Katz, which Henry and another person own. Popovich denied any sales of wine took place and asserted the State's evidence of other sales was from a disgruntled employee.

In March 1996, the State filed a two-count complaint against defendants, along with attached affidavits setting out the facts. One count alleged violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)), alleging defendants failed to deliver wine to about 160 consumers after the consumers paid for the wine. The parties settled this claim.

The State brought the second count under the Act (235 ILCS

5/1—1 *et seq.* (West 1996)), alleging defendants sold wine without a liquor license. The State asked the court to find defendants to be a nuisance, permanently enjoin them from selling liquor without a license, declare all contracts created through the use of illegal conduct rescinded, and order restitution.

In conjunction with the complaint, the State filed a motion for a temporary restraining order (TRO), seeking to freeze assets, provide access to business premises, impound documents, and appoint a receiver. The court granted a TRO, which temporarily restrained defendants from offering for sale, selling, or otherwise soliciting and executing wine purchase agreements with Illinois consumers. Shortly after this TRO, the parties entered into an agreed preliminary injunction. The court enjoined defendants from offering for sale, selling, or soliciting consumers for the purchase of alcohol with one exception. The exception allowed defendants to "solicit leads for a licensed retailer so long as [d]efendants clearly and conspicuously disclose orally and in writing (via order forms, signage, etc.) that [d]efendants are merely promoters of wine and are not licensees." The State later sought to remove this exception. The court did so because the Act does not allow such activities.

Defendants answered the complaint and the proceedings continued. In October 1998, the State filed a motion for summary judgment, arguing defendants were violating the Act by exposing wine for sale without a state liquor license. Defendants answered they were independent contractors of and promoters for Connoisseur, and this activity did not require licensing under the Act. Moreover, defendants answered they never actually sold wine, but instead accepted preference forms, which in turn had to be accepted by Connoisseur. The State replied since the Act did not permit the activities of defendants, they were violating it.

The circuit court denied the State's motion for summary judgment. However, the court entered judgment for defendants, upon their oral motion for summary judgment. The court ruled for defendants "[b]ecause Illinois statutes do not expressly require [d]efendant[s] to have a liquor license to engage in the activities participated in." The State appeals.

## II. ANALYSIS

■ A reviewing court conducts a *de novo* review of an award of summary judgment. *Olson v. Etheridge,* 177 Ill. 2d 396, 404, 686 N.E.2d 563, 566 (1997). Summary judgment is proper where the pleadings, depositions, admissions, affidavits, and exhibits on file, when viewed in the light most favorable to the nonmoving party, show the

movant is entitled to judgment as a matter of law. *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30-31, 719 N.E.2d 756, 764 (1999). Summary judgment is a harsh remedy and should only be granted when the right of the moving party is clear and free from doubt. *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 169-70, 620 N.E.2d 375, 377 (1993).

■ The State argues the trial court erred in granting summary judgment, because the actions of the defendant are not allowed under the Act without a license. The Act provides as follows:

"No person shall manufacture, bottle, blend, sell, barter, transport, deliver, furnish or possess any alcoholic liquor for beverage purposes, except as specially provided in this Act ***." 235 ILCS 5/2—1 (West 1996).

■ The cardinal rule in statutory construction is to give effect to legislative intent. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994); *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 483, 644 N.E.2d 817, 825-26 (1994). The primary guide as to intent is the language of the statute. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822. Words in the statute should be given their popularly understood meaning. *International Bureau of Fraud Control, Ltd. v. Clayton*, 188 Ill. App. 3d 703, 710, 544 N.E.2d 416, 421 (1989), citing *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215, 447 N.E.2d 394, 396 (1983). Where the statutory language is unclear, a court may look beyond it, but where it is clear the court must give it effect. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822. When the language is unclear, a primary source for construing the statute is the purpose behind the law and the evils the law is designed to remedy. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822. Courts avoid interpretations that would render part of a statute meaningless or void. *Fraud Control*, 188 Ill. App. 3d at 710, 544 N.E.2d at 421, citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 362-63, 489 N.E.2d 1374, 1379 (1986).

■ The Act is to be liberally construed toward protecting the public health, safety, and welfare and toward promotion of temperance in the consumption of alcohol by careful control and regulation of the manufacture, sale, and distribution of alcoholic liquor. 235 ILCS 5/1—2 (West 1996).

A strict or technical construction of any of its provisions detrimental to the public interest should be avoided. *Carrigan v. Liquor Control Comm'n*, 19 Ill. 2d 230, 236, 166 N.E.2d 574, 577-78 (1960). The business of selling liquor is not favored; no inherent right exists to carry it on and it may be entirely prohibited. *Daley v. Berzanskis*, 47 Ill. 2d

395, 398, 269 N.E.2d 716, 718 (1971). If the Act is to have any meaning, it must be interpreted as starting from a point of prohibition. The Act then provides exceptions where persons may conduct certain activities involving alcohol as long as they have a valid liquor license. 235 ILCS 5/2—1, 5—1 (West 1996). The State argues the Act prohibits what it does not permit. We agree. The Act must expressly permit the actions of the defendants in this case or they are in violation of the Act. There is no express permission for their conduct, and we conclude they violated the Act.

Moreover, the State contends defendants sold liquor without a license, which the Act specifically prohibits. Defendants argue they never sold wine but merely promoted it. They argue the way in which they promoted the wine did not constitute "selling" under the Act. This court must determine if defendants' acts, as alleged, constitute "selling" under the Act.

■ "Sale" is defined in the Act as "any transfer, exchange[,] or barter in any manner, or by any means whatsoever *** and includes and means all sales made by any person, whether principal, proprietor, agent, servant[,] or employee." 235 ILCS 5/1—3.21 (West 1996). The term " '[t]o sell' includes to keep or expose for sale and to keep with intent to sell." 235 ILCS 5/1—3.22 (West 1996).

■ Defendants state in their affidavit they furnished amounts of wine to the public to expose the wine for a later sale through giving out samples of wine. Although the sale would be consummated at a later time, under the liberal construction required by the Act such activities would fulfill the Act's definitions of "sale" and "to sell" because they exposed wine for ultimate sale. See 235 ILCS 5/1—3.21, 1—3.22 (West 1996). Without a license or applicable exception, such actions were unlawful. 235 ILCS 5/2—1, 10—1(a), 10—7 (West 1996).

The form defendants contend is merely a "preference form" is strikingly similar to a sales invoice. The form lists the name and address of Select at the top and provides lines to tally the wine order, figure the subtotal, add shipping and appropriate tax, and figure the total price. The form also lists the type of payment a consumer selects, through either providing a credit card number, attaching a check, or specifying the wine be sent cash on delivery. Although defendants did not ship the product or cash the consumer's check, they conducted a "sale" within the meaning of the Act. Both the intent behind the Act (see *Hassiepen v. Marcin*, 24 Ill. App. 3d 97, 100, 320 N.E.2d 572, 575 (1974)) and common sense dictate the finding of a sale under the Act. Although defendants later added the terms "all wines are delivered by Shermer Specialties, which will appear on all credit card receipts and statements" in small print at the bottom of the form, this does not

change the result: defendants are selling alcohol without a license. The language of the statute is sufficiently comprehensive to include any person, natural or artificial, and any kind of a sale or device used in lieu of a direct sale. *People ex rel. Stevenson v. Law & Order Club*, 203 Ill. 127, 131, 67 N.E. 855, 857 (1903).

Finally, defendants contend the Commission, through its regulatory activities, recognizes conduct comparable to defendants' and does not require licensure under the Act. In May 1997, the Commission promulgated a regulation requiring the licensure or registration of "tasting" representatives. 11 Ill. Adm. Code § 100.40 (1997) (added by 21 Ill. Reg. 5542, eff. May 1, 1997). A "tasting" is defined as the "supervised presentation of alcoholic products to the public at an off-premise licensed retailer." 11 Ill. Adm. Code § 100.10(r) (1997) (added by 21 Ill. Reg. 5542, eff. May 1, 1997). A licensee and/or a registered tasting representative must conduct the tasting. 11 Ill. Adm. Code § 100.10(r) (1997).

However, a tasting representative is in a fundamentally different position than are defendants. The tasting representative must meet the qualifications for licensure. 11 Ill. Adm. Code § 100.40(d) (1999) (amended at 23 Ill. Reg. 3787, eff. March 15, 1999). The tasting representative operates under the control of the off-premise licensee at the off-premises location, as the agent for the licensee who is offering the products for sale. As an agent for the licensee at the specified off-premise location (235 ILCS 5/10—3 (West 1996)), the tasting representative is authorized under the Act to furnish and sell alcoholic beverages to the public (235 ILCS 5/6—31 (West Supp. 1997) (added by Pub. Act 90—432, § 5, eff. January 1, 1998 (1997 Ill. Laws 4902, 4919—20))). Defendants do not fall within this exception, nor does it allow for defendants to sell liquor in violation of the Act.

## III. CONCLUSION

We reverse the judgment of the circuit court granting summary judgment in favor of defendants and remand this cause to the trial court to enter summary judgment in favor of the State.

Reversed and remanded with directions.

STEIGMANN, P.J., and McCULLOUGH, J., concur.