BURKE, Justice.
*311 [¶1] The United States District Court for the District of Wyoming certified a question to this Court concerning the definition of "sell" or "sale" set forth at Wyo. Stat. Ann. § 12-1-101(a)(xvi). This question asks us to determine whether Appellants, Traveling Vineyard and Michaela Robinson, engaged in the "sale" of alcohol at in-home wine tasting events. We answer the certified question in the affirmative.
CERTIFIED QUESTION
[¶2] Does the statutory definition of "sell" or "sale" in Wyo. Stat. Ann. § 12-1-101(a)(xvi) apply to the conduct of Traveling Vineyard and its Independent Wine Guides?
FACTS
[¶3] The district court's certification order sets forth the following facts pertinent to the certified question. Appellant, Phoenix Vintners, LLC, d/b/a Traveling Vineyard ("Traveling Vineyard"), is a Massachusetts Limited Liability Company with three federal and state licensed, bonded wineries. Within the State of Wyoming, Traveling Vineyard maintains three Direct Shipping permits, one for each of its wineries, and pays sales tax for each location under a single tax identification number. The individual Appellees are employees of the Wyoming Department of Revenue, Liquor Division (the "Division").
[¶4] Appellant, Michaela Robinson, is a Wyoming resident and one of Traveling Vineyard's independent contractors, known as "Independent Wine Guides," who earns compensation for educating guests and promoting products at in-home wine tastings. Ms. Robinson holds a Class A Industry Representative License.
[¶5] Independent Wine Guides like Ms. Robinson offer social hosts the opportunity to hold educational, private, and invitation-only in-home wine tasting events for their friends, relatives, and neighbors at their personal residences to learn about Traveling Vineyard's wines and accessories. These private residences are not licensed by the State of Wyoming to sell alcoholic beverages. The wine tasting events are free to attend and are hosted without obligation to purchase any of Traveling Vineyard's products. Independent Wine Guides are marketing agents for Traveling Vineyard and their functions include finding interested social hosts; familiarizing themselves with Traveling Vineyard's wines and products; attending the wine tasting events to answer questions regarding the nature, history, characteristics, and values of Traveling Vineyard's wines and wine accessories; and promoting Traveling Vineyard's wines and wine accessories by generating leads that Traveling Vineyard must then convert into sales.
[¶6] Prior to the wine tasting events, Independent Wine Guides order and pay for tasting materials, which include one bottle of each of five different wines from Traveling Vineyard via direct shipment. At the events, the social host pours and serves Traveling Vineyard's wines to the attendees, free of charge. During the events, Independent Wine Guides discuss Traveling Vineyard's products, educate attendees as to the qualities of Traveling Vineyard wines, and answer questions. At the conclusion of each event, attendees interested in hosting a future event, joining the Traveling Vineyard Wine Club, or purchasing wine are encouraged to contact Traveling Vineyard. Attendees may choose to fill out a "Survey & Interest Form," which is returned to Traveling Vineyard. The Survey & Interest Form asks for the following information: (a) the attendee's contact information; (b) the product code, product name, unit price, and quantity of the products the attendee is interested in purchasing from Traveling Vineyard, along with the subtotal, shipping and handling, and sales tax for those products; and (c) the attendee's credit card information and signature.
[¶7] The Survey & Interest Form advises the attendees they are not purchasing the products they've identified on the form and that they are making an "offer to purchase" the identified products, which may be accepted or rejected by Traveling Vineyard or its designee:
By completing this form you are not purchasing the products identified on the form, you are expressing your interest in the products. The information on this form, *312 including your payment information, will be forwarded to a designated licensee who is authorized to sell the products in your state. The designated licensee will reject your offer to purchase or will accept the offer to purchase and fulfill the order. Any sale made by a designated licensee will be subject to applicable local and state laws and sales taxes, as well as shipping and handling charges.
The Independent Wine Guides do not have authority to take or accept wine purchase orders, and they have no inventory available for sale at any time. Traveling Vineyard compensates its Independent Wine Guides according to the success of the leads generated at the wine tasting events based on several factors, including how many people attended the event and how many attendees purchased products from Traveling Vineyard after the event.
[¶8] In 2016, the Division became concerned that Traveling Vineyard was violating Wyoming law and requested information from Traveling Vineyard regarding its business model. Traveling Vineyard provided a letter explaining its operations in Wyoming. The Division responded with a letter asserting that some aspects of Traveling Vineyard's business model and some of its Independent Wine Guides' activities were "in conflict with Wyoming State Statutes, Title 12, Alcoholic Beverage Control Laws and the Wyoming Liquor Division (WLD) Rules and policies." Representatives from Traveling Vineyard subsequently met with representatives of the Division to review and discuss the matter. That meeting, however, did not resolve the parties' disagreements.
[¶9] In March 2017, Appellants filed a complaint in the federal District Court seeking a declaration that the Division improperly interpreted the definition of "sale" in Wyo. Stat. Ann. § 12-1-101(a)(xvi) and applied it to the activities of Traveling Vineyard and its Independent Wine Guides in violation of their commercial speech rights under the First Amendment to the United States Constitution. Appellees moved to dismiss the complaint and requested that the court abstain from exercising jurisdiction over issues that involve a novel and determinative question of state law. After a hearing, the court denied the motion to dismiss. The court agreed, however, that the issue raised by Appellants was an issue of state law and, pursuant to W.R.A.P. 11.01, it certified to this Court the question of whether the statutory definition of "sell" or "sale" applies to the conduct of Traveling Vineyard and its Independent Wine Guides. We agreed to answer the certified question.
STANDARD OF REVIEW
[¶10] The certified question presents an issue of statutory interpretation. We review questions of statutory interpretation de novo . Brock v. State ex rel. Wyoming Workforce Servs., Unemployment Ins. Div. , 2017 WY 47, ¶ 7, 394 P.3d 460, 462 (Wyo. 2017).
DISCUSSION
[¶11] Before we address the issue raised by the certified question, we note that the legislature has broad authority to regulate the sale of alcohol in Wyoming. "It is well settled, and it is conceded, that the state has the amplest powers to prohibit, regulate and control the traffic in and the sale and use of intoxicating liquors. See Sec. 10, Article 19 of our Constitution." Harrison v. Wyoming Liquor Comm'n , 63 Wyo. 13, 35, 177 P.2d 397, 404 (1947). The cited section of the Wyoming Constitution provides:
On and after the first day of March, 1935, the manufacture, sale and keeping for sale of malt, vinous or spirituous liquors, wine, ale, porter, beer or any intoxicating drink, mixture or preparation of like nature may be permitted in the State of Wyoming under such regulation as the legislature may prescribe.
As we have recognized, "[i]t has been long established that the legislature may control and regulate the sale of intoxicating liquors for the protection of the people." Albertson's, Inc. v. City of Sheridan , 2001 WY 98, ¶ 16, 33 P.3d 161, 168 (Wyo. 2001).
[¶12] The breadth of the legislature's authority to regulate alcohol is demonstrated by Wyo. Stat. Ann. § 12-5-405 (LexisNexis 2015), one of many statutes in Title 12 that invokes the definition of "sell" or "sale" at *313 issue in this case. The statute provides: "Industry representatives shall not sell or attempt to sell any alcoholic liquor within Wyoming, except to the division." The term "industry representative" is defined in Wyo. Stat. Ann. § 12-1-101(a)(vi) to include "all wholesalers, manufacturers, rectifiers, distillers and breweries dealing in alcoholic liquor or malt beverage, and proscriptions upon their conduct shall include conduct by a subsidiary, affiliate, officer, director, employee, agent, broker or any firm member of such entity." It is undisputed that Traveling Vineyard and its Independent Wine Guides are "industry representatives" for purposes of this statute. With this background in mind, we turn to the specific language at issue in this case.
[¶13] Wyo. Stat. Ann. § 12-1-101(a)(xvi) defines the terms "sell" or "sale" as follows:
(xvi) "Sell" or "sale" includes offering for sale, trafficking in, bartering, delivering or dispensing and pouring for value, exchanging for goods, services or patronage or an exchange in any way other than purely gratuitously. Every delivery of any alcoholic liquor or malt beverage made otherwise than by gift constitutes a sale[.]
Appellants contend the statutory definition of "sell" or "sale" does not encompass the activities of Traveling Vineyard or its Independent Wine Guides at in-home wine tasting events. Appellants characterize their activities as "promotion," and note that the statutory definition of "sell" or "sale" does not include "the words 'promoting,' 'marketing,' 'educating about,' 'distributing materials about,' 'answering questions about,' or others that would capture the nature of what IWGs do at wine tasting events." According to Appellants, "In reading all words of Wyo. Stat. Ann. § 12-1-101(a)(xvi) together, it is apparent that the legislature intended to include within the statutory definition conduct [amounting] to a transfer of title or consideration-neither of which occurs in the context of what IWGs do related to wine tastings."
[¶14] The Division responds that the actions of Traveling Vineyard and its wine guides at wine tasting events are not "purely gratuitous" because the in-home wine tastings exist for the very purpose of generating business. According to the Division, the "wine poured at the in-home wine tasting events cannot be considered a 'gift' because it is poured with the expectation that something will be given in return: a completed 'interest form,' guest information, brand recognition, or simply a guest's time and attention." The Division also contends that Traveling Vineyard's activities at wine tasting events qualify as "pouring for value" under the plain meaning of that phrase.
[¶15] In answering the certified question, we apply our usual rules of statutory interpretation: "Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous." Spreeman v. State , 2012 WY 88, ¶ 10, 278 P.3d 1159, 1162 (Wyo. 2012).
A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense. Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. In determining whether a statute is ambiguous we begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia . When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.
Brock , ¶ 8, 394 P.3d at 462-63 (quoting Jones v. State , 2011 WY 115, ¶ 11, 256 P.3d 536, 541 (Wyo. 2011) ). Both parties suggest that the statute at issue is unambiguous. We agree with that conclusion and, as a result, we look to the plain and ordinary meaning of the words employed in *314 Wyo. Stat. Ann. § 12-1-101(a)(xvi).[1]
[¶16] It is clear from a plain reading of the statute that the legislature intended an expansive meaning of the word "sale," broader than that term is commonly understood. The definition includes not only the exchange of goods for consideration, but also any exchange that is not "purely gratuitous." The legislature did not define the term "purely gratuitous." Accordingly, we look to the common definitions of those words. "Gratuitous" is commonly defined as "given freely or without recompense," or "not involving a return benefit, compensation, or consideration." Webster's Third New International Dictionary 992 (3d ed. 2002). "Purely," in turn, is synonymous with "wholly" or "completely." Id. at 1845. Finally, Webster's defines "exchange" as "the act of giving or taking one thing in return for another as if equivalent." Id. at 792. Accordingly, applying the "purely gratuitous" language, the question is whether Traveling Vineyard receives any recompense, or a return benefit, for providing wine to social guests.
[¶17] We conclude that it does. Appellants provide wine at the wine tasting events with the expectation that they will receive a completed "Survey & Interest Form" or a guest's contact information. Traveling Vineyard pays Independent Wine Guides based not only on the number of attendees who purchase products from Traveling Vineyard after the events, but also on the number of guests who attend the tasting events. This demonstrates that Traveling Vineyard recognizes that it benefits from every guest who attends a tasting event. Accordingly, we conclude Appellants' activities are not "purely gratuitous" because they receive a return benefit from the guests at the wine tasting events. Indeed, Appellants' business model would not be sustainable if their activities at the wine tasting events were "purely gratuitous."
[¶18] The statutory definition of "sell" or "sale" is also satisfied by "pouring for value." "Value" is commonly defined to mean "relative worth, utility, or importance." Webster's Third New International Dictionary 2530. Accordingly, Traveling Vineyard receives value from pouring wine if it receives anything of worth, utility, or importance. For the reasons identified above, we conclude that Appellants' conduct qualifies as a "sale" under the statute because they receive something of worth and utility in return for pouring wine; namely, completed interest forms and contact information of guests who attend the wine tasting events.
[¶19] Additionally, the legislature included "offering for sale" as an activity that satisfies the statutory definition of "sell" or "sale." The plain meaning of the word "offer" is "to present for acceptance or rejection" or "to make available or accessible." Webster's Third New International Dictionary 1566. Black's Law Dictionary 1253 (10th ed. 2014) supplies a similar definition: "The act or an instance of presenting something for acceptance." Appellants' conduct in pouring wine and ultimately making their products available for purchase constitutes an "offer for sale" under the plain meaning of that phrase. There is no question that Appellants dispense wine at wine tasting events with the hope of satisfying the tastes of potential buyers. If the guests become interested in obtaining wine from Appellants, they can provide the information necessary to purchase that wine or become members of Traveling Vineyard's wine club. A major purpose of Traveling Vineyard's wine tasting events is to make sales, either in the form of individual *315 bottles of wine or subscriptions to its wine club. Pouring wine and providing the opportunity to purchase that wine constitutes an "offer for sale" under the plain meaning of that phrase.
[¶20] A similar conclusion was reached in Cellarmaster Wines of Mass., Inc. v. Alcoholic Beverages Control Com. , 27 Mass.App.Ct. 25, 534 N.E.2d 21 (1989). In that case, the plaintiff, Cellarmaster, claimed that providing wine at off-premises wine tasting sessions did not constitute a "sale" under a statute providing that "No person shall ... sell or expose or keep for sale, ... alcoholic beverages or alcohol, except as authorized by this chapter." Id. , 534 N.E.2d at 23 (emphasis omitted). The court determined "It cannot reasonably be questioned that [Cellarmaster] was exposing its wines for sale at wine tasting sessions. This method of operation was an integral part of the marketing strategy used by [Cellarmaster]." Id.
[¶21] We note that, despite the fact that Traveling Vineyard's "Survey & Interest Forms" ask for a purchaser's credit card information, the forms provide that the buyer's completion of the form constitutes a mere "offer to purchase," which Appellants may accept or reject. This characterization, however, does not change the nature of Appellants' activities at the wine tasting events. As the Appellate Court of Illinois observed regarding a similar form:
The form defendants contend is merely a "preference form" is strikingly similar to a sales invoice. The form lists the name and address of [defendants] at the top and provides lines to tally the wine order, figure the subtotal, add shipping and appropriate tax, and figure the total price. The form also lists the type of payment a consumer selects, through either providing a credit card number, attaching a check, or specifying the wine be sent cash on delivery. Although defendants did not ship the product or cash the consumer's check, they conducted a "sale" within the meaning of the Act. Both the intent behind the Act ... and common sense dictate the finding of a sale under the Act. Although defendants later added the terms "all wines are delivered by Shermer Specialties, which will appear on all credit card receipts and statements" in small print at the bottom of the form, this does not change the result: defendants are selling alcohol without a license.
People v. Select Specialties , 317 Ill.App.3d 538, 251 Ill.Dec. 462, 740 N.E.2d 543, 548 (2000) (citations omitted).[2]
[¶22] As indicated above, Appellants contend that the definition of "sell" or "sale" does not include promoting, marketing, or educating potential consumers about their products. Appellants fail to acknowledge, however, that their promotional, marketing, and educational activities at the wine tasting events involve pouring alcohol. When alcohol is "poured for value" in combination with these activities, the statutory definition is met. As noted by the Division, "The key point is that, as part of Traveling Vineyard's marketing, alcohol is dispensed and poured at unlicensed locations."[3]
[¶23] Appellants also contend that interpreting "sell" and "sale" as the Division suggests would lead to absurd results. They assert that wine and beer are often served free of charge at in-home social gatherings and events held by clothing, jewelry, or other retailers. They contend that providing alcohol at these events would also satisfy the statutory definition of a "sale" under the *316 Division's interpretation. In essence, Appellants suggest a long trip down a "slippery slope" that will negatively impact all sorts of businesses if the Division's definition of "sale" is accepted. In response, we would offer a few comments. First, the facts presented in the hypothetical scenarios are not present in the certified question and it is our intent to limit our response to the question presented. Second, the product that the vendor is attempting to sell in this case is alcohol. The product that the vendor is attempting to sell in the hypothetical scenarios is something other than alcohol. In this case, we have been provided with a factual scenario in which Traveling Vineyard is in the business of selling wine. They have adopted a business model in which representatives of Traveling Vineyard stage events at which wine is poured in Wyoming at unlicensed establishments in an effort to sell that product to Wyoming consumers. This is not a case in which we have been asked to determine whether the practice would fit within the definition of "sale" if the pouring did not occur. The pouring and tasting of wine is an integral component of Traveling Vineyard's business model. While an argument could be made in the hypothetical scenarios that the "value" derived from pouring alcohol is too tenuous or abstract to fit within the statutory definition when that benefit is merely good will, those are not the facts presented in the case before us. Traveling Vineyard is obtaining sufficient value from its tasting events to bring its conduct within the definition of "sale" as defined in Wyo. Stat. Ann. § 12-1-101(a)(xvi).
CONCLUSION
[¶24] For the foregoing reasons, we answer the certified question in the affirmative: The statutory definition of "sell" or "sale" in Wyo. Stat. Ann. § 12-1-101(a)(xvi) applies to the conduct of Traveling Vineyard and its Independent Wine Guides.
KAUTZ, J., dissenting, in which DAVIS, C.J., joins.
[¶25] I respectfully dissent. The majority observes that the Wyoming legislature "has broad authority to regulate the sale of alcohol in Wyoming." It does not follow, however, that all liquor regulation statutes should be construed broadly. It does not follow that the statutorily created definition of "sell" or "sale" should be read broadly to encompass activity beyond that specifically identified by the legislature.
[¶26] Wyo. Stat. Ann. § 12-1-101(a)(xvi) (LexisNexis 2017) is plain and unambiguous. "When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction." Shumway v. Worthey, 2001 WY 130, ¶ 8, 37 P.3d 361, 365 (Wyo. 2001), citing Wyo. Bd. of Outfitters and Prof'l Guides v. Clark, 2001 WY 78, ¶ 12, 30 P.3d 36, 41 (Wyo. 2001).
[¶27] "This Court is not at liberty to add words to a statute that the legislature chose to omit." Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue, 2017 WY 6, ¶ 31, 387 P.3d 725, 733 (Wyo. 2017). "Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions." BP Am. Prod. Co. v. Dep't of Revenue , 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo. 2005), citing Gray v. Stratton Real Estate, 2001 WY 125, ¶ 5, 36 P.3d 1127, 1128 (Wyo. 2001) ; Bowen v. Wyo. Real Estate Comm'n, 900 P.2d 1140, 1143 (Wyo. 1995). The plain and ordinary meaning of the language in § 12-1-101(a)(xvi) shows that the Appellants' activity does not fall within the definition of "sell" or "sale."
[¶28] Appellants' activity at the wine tasting events obviously does not constitute a "sale" of the wine, and the Appellants do not "sell" any wine at the events. The legislature expressly included various forms of selling in the definitions of these terms, including "offering for sale," "trafficking in," "bartering," "delivering or dispensing and pouring for value," and "exchanging for goods, services or patronage." Conspicuously absent from that list are terms describing what Appellants do-"promoting," "marketing," "educating about," "distributing materials about," "answering questions about," or "obtaining expressions of interest."
[¶29] Appellants' activity does not fit the definition of "dispensing and pouring for value."
*317 There is no requirement that guests provide any information to the wine company in exchange for the wine. The wine is not dispensed or poured for anything of value from the guests. If the wine company obtains anything from the act of dispensing and pouring the wine, it is a hope that the guest will ask to purchase wine-something that cannot be said to have any specific value.
[¶30] The wine company does not require that any attendee fill out the interest cards or give anything to the company. In that regard, the wine is provided "purely gratuitously." The definition of gratuitous fits this situation exactly. The wine is "given freely or without recompense," or "not involving a return benefit, compensation, or consideration." Webster's Third New International Dictionary 992 (3d ed. 2002). The majority argues that if the wine were provided gratuitously, Phoenix's business model would fail. Although there is no evidence either way, the economic logic behind this business model indicates that it succeeds because the wine is provided gratuitously. If it were not for the free, no obligation, nature of this business model, fewer people may attend or be inclined to participate at the outset. The majority's argument assumes that if Phoenix successfully generates customer interest by giving away samples of wine, those gratuitous samples somehow become sales, or exchanges for value. I disagree.
[¶31] Similarly, the definition of "exchange" does not fit here. An exchange would occur if the wine was provided in return for a customer's expression of interest in purchasing a certain quantity of wine. Here, the recipient of the wine does not have to provide any expression of interest or anything else to get the wine. No "exchange" occurs during the wine event. The exchange occurs when the customer gives his request to the company, and the company then provides the wine. Section 12-1-101(a)(xvi) provides that any exchange which is not made gratuitously constitutes a sale. I conclude the Independent Wine Guide's activity does provide guests samples of wine gratuitously, but I also conclude that there is no exchange made between the Independent Wine Guide and the guests.
[¶32] The Independent Wine Guide's activity also does not meet the definition of "offers for sale." An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). In other words, an offer must give the offeree the ability to bind the offeror to the sale by accepting the offer. Shume v. Pearson Educ. Inc., 306 F.Supp.3d 117 (D.D.C. 2018). Appellants clearly make no offer to guests at the wine events whereby the guests could accept that offer and create a binding contract. Nothing is presented to guests at the events "for acceptance or rejection." Guests do not accept any offer from Phoenix; instead, if they choose to do so, they can offer to purchase wine from Phoenix.
[¶33] The legislature concluded § 12-1-101(a)(xvi) with the statement "[e]very delivery of any alcoholic liquor or malt beverage made otherwise than by gift constitutes a sale." A gift is "something that is voluntarily transferred by one person to another without compensation." Webster's Third New International Dictionary 956 (3d ed. 2002). The wine samples at Appellants' wine events are transferred without compensation. They are gifts, and not sales.

Both parties reference the legislative history relating to the statutory definition of "sell" or "sale." Appellants note the legislature has expanded the definition on at least two occasions since 1935. The Division responds by noting that the statute has included the "purely gratuitous" language since its initial passage and has not been revised to remove that language. We typically look to legislative history only in cases where a statute is ambiguous. See, e.g. , Mathewson v. City of Cheyenne , 2003 WY 10, ¶ 6, 61 P.3d 1229, 1232 (Wyo. 2003) ("We resort to extrinsic aids of statutory interpretation, such as legislative history or intent, only when statutes are ambiguous."); cf. Barney v. BAC Home Loans Serv., L.P. (In re Gifford) , 2013 WY 54, ¶ 12, 300 P.3d 852, 856 (Wyo. 2013) (stating that "[e]ven if a statute is unambiguous, this Court has recognized the benefit of looking to a statute's legislative history, however sparse that might be, to confirm the legislative intent reflected in the statute's plain language"). In any case, however, we are not persuaded that the legislative history contains any indications of legislative intent pertinent to the question at issue in this case.

Appellants' "Survey & Interest Form" is not part of the record in this case. The certification order, however, sets forth several pertinent facts about the form. As indicated above, the form asks for a guest's contact information; the product code, product name, unit price, and quantity of the products the guest is interested in purchasing from Traveling Vineyard; the subtotal, shipping and handling, and sales tax for those products; and the guest's credit card information and signature. The form also provides that "The designated licensee will reject your offer to purchase or will accept the offer to purchase and fulfill the order," indicating that no further action on the part of the guest is required in order to purchase wine from Traveling Vineyard.

For the same reason, we can easily distinguish Appellants' comparisons to magazine tear-sheets and website purchasing. Submitting an order form online or from a magazine does not involve dispensing alcohol. Further, the Division is specifically authorized to regulate online and mail orders pursuant to Wyo. Stat. Ann. § 12-2-204.